AUGUST BELMONT HOTEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16382. Promulgated January 6, 1930.

*George R. Davis, Esq.*, and *H. K. McCook, Esq.*, for the petitioner.
*John W. Edwards, Esq.*, for the respondent.

646

### OPINION.

ARUNDELL: No question was raised by either party as to the Board's jurisdiction to hear these proceedings. However, in view of certain statements appearing in the record that the petitioner corporation was dissolved in the summer of 1918, the Board on its own motion set the case down for hearing on the jurisdictional question. Both parties contend that the petitioner, though dissolved in 1918 by virtue of the laws of New York State (under whose laws it was incorporated), continued in existence for an indefinite time " for the purpose of paying, satisfying, and discharging any existing debts or obligations, collecting and distributing its assets, and doing all other acts required in order to adjust and wind up its business and affairs, and may sue and be sued for the purpose of enforcing such debts or obligations, until its business and affairs are fully adjusted and wound up." *Metropolitan Telephone Co.* v. *Metropolitan Telephone Co.*, 141 N. Y. Sup. 598, 603; *City of New York* v. *New York, etc., Co.*, 231 N. Y. 18; 131 N. E. 554. In our opinion the petitioner corporation was the proper party to institute this proceeding and we have jurisdiction to entertain it.

Proceeding to consider the issues raised by the pleadings, we take up first that of whether the statute of limitations has run against the deficiency proposed by the respondent.

The position of the petitioner, as we gather it from the brief, is that the tentative return started the running of the statute, but even if it did not, then the final return did, as it showed all the petitioner's gross income. We do not find it necessary to pass on the question of which return started the running of the limitation period because more than five years elapsed between the date of filing the last return (June 14, 1919) and the mailing of the deficiency notice on April 22, 1926. The respondent's position is that the final return, covering as it did only the first four months of the year, was not a return for the year 1918 as contemplated by statute and therefore was not sufficient to start the running of the limitation period for that year.

The petitioner kept its books on a calendar year basis and prior to 1918 it had filed its returns on that basis. That was the proper basis for filing its returns and the statute required that it continue to file them in that manner unless permission to change the accounting period was obtained from the Commissioner. Sections 212 and 226, Revenue Act of 1918. The papers which the petitioner filed with the collector were not and did not purport to be calendar year returns and the respondent was not required to accept them as such. "The statute of limitations does not begin to run until a return or returns have been filed which at least purport to cover or include the period involved." *Paso Robles Mercantile Co.*, 12 B. T. A. 750, 753; affd., 33 Fed. (2d) 653. This is not a case merely of an honest mistake in attempting to comply with the law as in the *Mabel Elevator Co.* case, 2 B. T. A. 517; 17 Fed. (2d) 109; neither is it a case where all the items of gross income were shown in the return filed, as in *F. A. Hall Co.*, 3 B. T. A. 1172; nor is there in this case a "substantial" compliance with the statute as in *National Tank & Export Co.*, 3 B. T. A. 1217, and *Abraham Werbelovsky, Executor*, 8 B. T. A. 442. The petitioner's largest transaction in 1918 was the sale of its assets in May of 1918. The returns which it filed, both being filed in the succeeding calendar year, not only make no mention of the transaction, but very carefully state that they cover only the period prior to that in which the transaction took place. *Bankers' Trust Co.* v. *Bowers*, 295 Fed. 89, and similar cases cited are not in point because of the lack of any showing that petitioner's taxable year ended short of the full calendar year. It is clear from the evidence that the corporation was in existence subsequent to April 30, 1918, for as late as May 24, 1918, a meeting of its board of directors was held. In *E. F. Stevens et al.*, 14 B. T. A. 360, the petitioner's

return as filed covered only three months of the calendar year and we held:

Since the returns filed in May, 1921, covered only three months of the calendar year before us, the period within which the tax for that year must be assessed did not begin to run from the date of such filing.

In *Norwich Woolen Mills Corporation*, 18 B. T. A. 303, three affiliated corporations, with a fiscal year ending March 31, filed a return for the period April 1, 1920, to December 31, 1920. On March 7, 1921, they filed preliminary certificates of dissolution with the secretary of state of the jurisdiction under which they were incorporated. They filed no tax return for the period January 1 to March 7, 1921, and the respondent asserted a deficiency for that period which the transferee of the corporations contended was barred. Holding that the return filed was insufficient to start the running of the limitation statute against the period involved, we said:

The return filed appeared on its face to cover only the period to December 31, 1920. It included only the income to that date. No return has ever been filed by the predecessor companies for any period after that date. The period within which assessments may be made does not begin to run until a return is filed. A return for nine months is not a return for twelve months even though a twelve months' return should have been filed which would include the nine months for which the return was filed.

On the authority of the above cases we hold that the statute of limitations has not run against the deficiency proposed for the period May 1 to December 31, 1918.

Petitioner argues that the notice of deficiency issued by the respondent is void because it asserts a deficiency for the period May 1, 1918, to December 31, 1918, and, as the taxpayer was on a calendar year basis the tax must be computed for the calendar year. We had a similar situation in *Premier Packing Co.*, 12 B. T. A. 637, where the respondent computed a deficiency for only the first month (February, 1918) of petitioner's fiscal year. We held that:

Petitioner, under the facts in this case, could have no deficiency "for the month of February, 1918." The deficiency, if any, is for the fiscal year ending January 31, 1919 * * *.

So, in the present case, while it is improper to call the deficiency a deficiency for a part of a year, the respondent's improper designation of it does not void his determination. Cf. *Norwich Woolen Mills Corporation, supra.*

In finding the amount of profit realized by petitioner on the sale of its assets in May, 1918, the respondent treated the face value of the property received as its actual value in the amount of $3,800,-000, and deducted from this what he denominated the "cost value"

of the furniture and leasehold in the aggregate amount of $1,995,-691.11. The consideration received consisted of cash, notes, bonds, and preferred stock. There is no issue as to the amount of cash received by petitioner nor as to respondent's determination of the value of the notes and stock. The value placed by respondent on the furniture for the purpose of determining gain or loss on its sale is not in dispute. This narrows our immediate problem down to determining the value of the bonds received and the value of the leasehold.

In the deficiency notice respondent used the figure of $1,209,024.44 as the " cost value " of the lease. It is not explained in the record what is meant by the term " cost value," but we presume that it is fair market value as of March 1, 1913, depreciated to date of sale. See section 202 of the Revenue Act of 1918. For the purpose of establishing the March 1, 1913, value petitioner offered the testimony of three witnesses, one of whom, although he gave details as to the method of computation of leasehold values, expressed no opinion as to the value of this lease. Of the other two witnesses, one is a practical hotel man of twenty years experience in New York City, and the other is a hotel broker, who for twenty years has been engaged in buying, selling, leasing, appraising and operating hotels. Both of these witnesses were familiar with hotel conditions and the value of hotel leaseholds in New York in 1913. One of them arrived at a March 1, 1913, value of slightly over $3,000,000, by computing the estimated gross income from room rentals and liquor sales, deducting from this the rent payable under the lease, taxes, and operating expenses, and reducing the resultant figure to present worth. The hotel broker fixed the value of the lease at $3,000,000 partly on the basis of earnings, and on his knowledge of the sales price of other leaseholds. From the testimony of these witnesses, supported as it was with the details of the methods by which they reached their values and their familiarity with leasehold values, we find as a fact that the fair market value of petitioner's leasehold at March 1, 1913, was $3,000,000. In determining the amount realized on the sale this figure, $3,000,000, should be depreciated by that portion of the original term of 20 years that elapsed between March 1, 1913, and the date of sale, May 1, 1918. *Kaufman Straus Co.*, 2 B. T. A. 718.

Petitioner also offered evidence for the purpose of establishing the value of its good will at March 1, 1913. The opinions expressed by the witnesses on this point were predicated primarily on a statement of income for five years preceding 1913 which was placed in evidence. The earnings reported in petitioner's tax returns filed for that period differed so widely from those presented to the witnesses

that we deem it impossible to find the value of good will with any degree of accuracy.

On the question of the value of the bonds received as a part of the consideration for the sale, the petitioner's evidence consisted of the testimony of two witnesses, each of whom has been in the business of appraising and buying and selling real estate and mortgages for thirty years or more. It appears that at the time of the issuance of the bonds here involved, supported by a mortgage on the leasehold, this method of financing was unusual in New York and it was difficult to interest investors in such securities. Mortgages of this kind were regarded as junior mortgages. In this particular case the mortgage given was on the leasehold only, whereas leasehold mortgages are sometimes secured by a building erected by the lessee, and in this respect the mortgage here involved was regarded as rather an inferior type. From the testimony of petitioner's witnesses we find as a fact that the bonds received by the petitioner as a part of the consideration for the sale of its leasehold and other assets had a market value at the time received not in excess of 60 per cent of the face value, or $1,380,000.

*Further proceedings will be had under Rule 62 (d).*