LOUIS HYMEL PLANTING & MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2903.   Promulgated December 23, 1926.

Where a corporation filing returns on a calendar year basis is dissolved March 31, 1919, the return which included the income from January 1 to that date was a return for the year and it is entitled to the entire specific exemption of $3,000, but is entitled to a credit of only three-twelfths of the average invested capital, the invested capital being averaged over the entire twelve-month period.

*Isom J. Guillory, Esq.,* and *E. Barrett Prettyman, Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes for 1919 in the amount of $10,121.73. The deficiency arises on account of the action of the respondent in treating the return of the petitioner as a return for a fractional part of a year and in prorating the invested capital and the specific exemption instead of allowing the full amount of each.

#### FINDINGS OF FACT.

The petitioner was a corporation with its principal office at Central, La., prior to 1919 and up to March 31, 1919, when it liquidated its assets and dissolved. The petitioner filed a return for the calendar year 1919 on March 8, 1920, in which it reported no income and which contained the statement " out of business January, 1919." Upon an audit based on a revenue agent's report, the respondent determined that the petitioner's income for the three-month period from January 1, 1919, to March 31, 1919, was $31,438.54, which was all the income received during the calendar year. Its invested capital was determined by the respondent to be $205,000. The respondent reduced the petitioner's excess-profits credit by 75 per cent and likewise reduced the specific exemption of $3,000 by 75 per cent, upon the ground that the return was for a period of three months and not for the twelve-month period.

OPINION.

TRAMMELL: The only question presented for decision in this case is whether the Commissioner erroneously computed the excess-profits credits and the specific exemption of $3,000. The petitioner contends that it should be allowed a credit of 8 per cent of the full $205,000 and the entire exemption of $3,000, since its return was for the full calendar year 1919, even though it had liquidated and dissolved on March 31, 1919. The Commissioner, on the other hand, contends that the return was for a fractional part of the year and that the excess-profits credit should be the same fractional part of the average invested capital for the year as the number of months for which the return was filed bears to the full calendar year.

The respondent introduced in evidence the corporation income and profits-tax return of the petitioner which was filed in the office of the collector of internal revenue on March 8, 1920, in which the petitioner reported no income for that year but merely stated " out of business January 1, 1919." Counsel for respondent stated at the hearing as follows: " It is further agreed that the taxpayer filed a corporation income profits tax return for the calendar year 1919 in which it stated it was out of business."

The pertinent sections of the Revenue Act of 1918 involved are:

SEC. 312. That the excess-profits credit shall consist of a specific exemption of $3,000 plus an amount equal to 8 per centum of the invested capital for the taxable year.

SEC. 305. That if a tax is computed under this title for a period of less than twelve months, the specific exemption of $3,000, wherever referred to in this title, shall be reduced to an amount which is the same proportion of $3,000 as the number of months in the period is of twelve months.

SEC. 326. (d) The invested capital for any period shall be the average invested capital for such period, but in the case of a corporation making a return for a fractional part of a year, it shall (except for the purpose of paragraph (2) of subdivision (a) of section 311) be the same fractional part of such average invested capital.

If the return involved in this case was for a three-month period, a fractional part of a year, the computation of the Commissioner of the excess-profits credit and exemption is correct. The statute is clear and unambiguous on this point.

Section 305 specifically states:

If a tax is computed under this title for a period of less than twelve months, the specific exemption of $3,000, wherever referred to in this title, shall be reduced to an amount which is the same proportion of $3,000 as the number of months in the period is of twelve months.

Section 326 (d) states:

The invested capital for any period shall be the average invested capital for such period, but in the case of a corporation making a return for a frac-

tional part of a year, it shall * * * be the same fractional part of such average invested capital.

Thus the question is squarely as to whether, when a corporation liquidates its assets and dissolves during a taxable year, its return for the year during which it dissolves is a return for the year or is a return for a fractional part of a year. A case involving this principle was presented to the Court of Claims in the case of *Strong* v. *United States*, 62 Ct. Cls. 67. That case, arose, however, under the Revenue Act of 1917 and not under the Revenue Act of 1918. We believe, however, that the reasoning of the court is applicable to the provisions of the Revenue Act of 1918. In that case the court held that a corporation which dissolved before the end of its taxable year was entitled to have its tax computed on the basis of its full invested capital and full specific exemption. The facts and the issue decided in that case were stated by the court as follows:

The facts are admitted. From these it appears that the partnership of Strong, Hewat & Co. originated in 1898 and was engaged in business until February 28, 1918, when it was dissolved. Upon the dissolution of the partnership a corporation was formed on March 1, 1918, under the name of Strong, Hewat & Co., Inc., which took over all the assets and liabilities of the old firm and continued its business. The partnership was required under the Revenue Act of 1917 and the regulations to file an excess profits tax return for the six months' period ending February 28, 1918, the date of its dissolution. Its average invested capital for a year appeared to be $791,607.70. The Commissioner determined that one-half of that amount was the invested capital of the concern for the six months' period, arriving at this conclusion by dividing the twelve months' average into two parts, or, as stated by government counsel:

"The Commissioner allowed one-half of the invested capital for the full year and one-half of the specific exemption of $6,000, since the return was filed for a six months' period."

Recovery is sought of the amount by which its excess profits tax, paid under the Commissioner's ruling, exceeds the taxes it would be required to pay if computed on the basis of a specific deduction of $6,000 and an invested capital of $791,607.70, the question presented being whether the Commissioner's action was correct. This depends on the construction to be given to the applicable statutes, viz: Sections 201, 203, and 207 of the Revenue Act of 1917, 40 Stat. 303.

Section 201 of the Revenue Act of 1917 levies certain stated percentages " of the amount of the net income in excess of the deduction (determined as hereinafter provided) * * *." The pertinent part of section 203 fixes the " deduction " as follows:

Sec. 203. That for the purpose of this title the deduction shall be as follows, except as otherwise in this title provided—

*        *        *        *        *        *        *

(b) In the case of a domestic partnership * * * the sum of (1) an amount equal to the same percentage of the invested capital for the taxable

year which the average amount of the annual net income of the trade or business during the prewar period was of the invested capital for the prewar period (but not less than seven or more than nine per centum of the invested capital for the taxable year), and (2) $6,000.

Section 207 defines invested capital. It contains the following pertinent language:

That as used in this title, the term "invested capital" for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

The court, in deciding in favor of the taxpayer, used the following language:

When the facts are found to be, as admitted here, that the average invested capital for the taxable year is a given sum, the language of the statute plainly prescribes the method to be pursued in computing the amount of taxes to be paid, and where the amount of taxes due for an entire taxable year is involved the language of the statute furnishes a method that is clear and complete. It levies a tax to be "paid for each taxable year"; it speaks of invested capital "for the year" and prescribes deductions of a percentage of the invested capital "for the taxable year." There is no specific mention of parts of the year in this connection. The partners had in their business an average actual invested capital of $791,607.70—not half of that sum, but all of it. When the concern went out of business it was required to make its returns and did so. If it could have waited until the end of its fiscal year and had then made its returns, having ceased business six months before, its reported net income for the year (as is suggested by its counsel) would have been exactly the same as that which was reported. The deductions would then have been on the annual basis.

* * * The Revenue Act of 1917 authorizes a specific deduction of $6,000 in the case of a domestic partnership's net income, and we think it clear that this exemption, if allowable at all, must be the amount stated. The statute is the only authority for allowing it and the statute could have prescribed a lesser deduction when the returns were for part of the year, but it left the deduction at the stated figure and is not to be amended by engrafting on it by construction something that Congress did not express. The Government contends that the specific deduction for a full taxable year "should be proportionate" to the period for which the return is filed, and as indicating that any other theory results in unfairness it argues that, upon the dissolution of the partnership, a corporation was formed and continued the business that got the benefit in its return of the specific deduction authorized for corporations. It received this deduction, however, because the statute allowed it, and because it was a different entity from the partnership which preceded it. And with the further contention that the "logical method" for determining the tax for a fraction of the year is the one adopted by the Commissioner we are not concerned, beyond the question whether the logical method coincides with the statutory method. The latter method is the controlling one.

While the decision of the court related to the excess-profits tax of a domestic partnership, the decision is clearly applicable to corporations, the only difference being in the amount of specific exemption, which in the case of corporations is $3,000.

The above decision of the Court of Claims was rendered on December 7, 1925, and there has been no appeal. On the contrary, under date of April 2, 1926, the Commissioner promulgated T. D. 3848, which reads as follows:

T. D. 2689, approved April 1, 1918, is hereby revoked and article 20 of Regulations 41 is hereby amended to read as follows:

ART. 20. *Computation of tax for period less than 12 months.*—If a corporation or partnership at any time, either because it has just designated a fiscal year as provided in sections 8 or 13 of the act of September 8, 1916 (see Income Tax Regulations, arts. 31 and 211), or for any other reason, makes a return for a period of less than 12 months, the deduction will be the full amount allowable for a period of 12 months, i. e., the deductions shall not be prorated in the proportion that the number of months for which the return is made bears to 12 months.

In lieu of section 203 of the Revenue Act of 1917, the Revenue Act of 1918 contains sections 311 and 312 under which the " credits " are determined. Section 312 is as follows:

SEC. 312. That the excess-profits credit shall consist of a specific exemption of $3,000 plus an amount equal to 8 per centum of the invested capital for the taxable year.

In place of section 207 of the Revenue Act of 1917, the Revenue Act of 1918 has section 326, subdivision (d) of which is quoted above.

The Revenue Act of 1917 contains no provision corresponding to subdivision (d) of section 326 relating to returns made for a fractional part of a year. However, the above language which specifically provides that in the case of a return for a fractional part of a year the invested capital shall be the same fractional part of such average invested capital, does not apply to the situation presented in this case, unless it be held that the return was for a fractional part of a year.

The question of what is a fractional part of a year and what is a return for a year was presented in the case of *Bankers' Trust Co.* v. *Bowers*, 295 Fed. 89, decided by the Circuit Court of Appeals, Second Circuit. In that case one John Glackner died April 4, 1921. On March 15, 1922, his executors filed two income-tax returns, one reporting the net income of decedent during the calendar year 1921, and the other the net income received by the plaintiffs as executors during the same calendar year, and the tax on each return was computed on the basis of the return being for a full calendar year. An additional tax on each return was assessed under the provisions of section 226 (c) of the Revenue Act of 1921, and it was this additional tax which was sought to be recovered in that suit. The District Court held that the taxpayers were not entitled to recover, but the Circuit Court of Appeals reversed the District Court, holding that section 226 was not applicable to the returns filed.

Section 226 of the Revenue Act of 1921 is as follows:

RETURNS FOR A PERIOD OF LESS THAN TWELVE MONTHS.

SEC. 226. (a) That if a taxpayer, with the approval of the Commissioner, changes the basis of computing net income from fiscal year to calendar year a separate return shall be made for the period between the close of the last fiscal year for which return was made and the following December 31. If the change is from calendar year to fiscal year, a separate return shall be made for the period between the close of the last calendar year for which return was made and the date designated as the close of the fiscal year. If the change is from one fiscal year to another fiscal year a separate return shall be made for the period between the close of the former fiscal year and the date designated as the close of the new fiscal year.

(b) In all cases where a separate return is made for a part of a taxable year the net income shall be computed on the basis of such period for which separate return is made, and the tax shall be paid thereon at the rate for the calendar year in which such period is included.

(c) In the case of a return for a period of less than one year the net income shall be placed on an annual basis by multiplying the amount thereof by twelve and dividing by the number of months included in such period; and the tax shall be such part of a tax computed on such annual basis as the number of months in such period is of twelve months.

The real question which was before the court in that case was whether the returns required to be filed for Glackner and his estate were returns for a full taxable year or returns for a period of less than one year. In passing on this question the court said:

In the view we take, it will be unnecessary to consider the constitutional questions presented; this, for the reason that section 226, subdivision (c) provides solely for the placing of income on an annual basis and for computation of the tax thereon in the case of a return for a period of less than one year where the change is made voluntarily by the taxpayer or pursuant to an order of the commissioner. The fundamental scheme of title 2 of the Revenue Act is for a tax upon the net income of the taxpayer during an accounting period of 12 successive months. This general accounting period seems to be a predetermined measure to be applied to a taxpayer as income, and is not affected by his death or change of status within the period. The tax is imposed upon the entire net income for such period, and the return of such income constitutes his return for the period of 12 full months, even though he may have lived only a portion thereof. The exception to this is where a voluntary change is made in the accounting period by the taxpayer, or where it becomes involuntary in so far as the taxpayer is concerned by the commissioner's declaring the taxable period terminated under section 250 (g)  *  *  *.

The court further said:

Thus it will be observed that, except where a voluntary change is made, the accounting period is 12 months, which becomes the taxable year  *  *  *.

*  *  * The time of receipt of income or the ability to receive income has no bearing upon the accounting period. A taxpayer may receive his income for the year on the first day of the year. He may become a nonresident alien during the year, without property in or income from any source in the United States. As an alien, he may have come to this country during the first

taxable year, and he may have attained his majority or become incompetent during the year. When during the year his status changes, and he becomes a taxpayer, or ceases to be one, is immaterial. If he received taxable income during any part of that year, and kept his books on a calendar year basis, a return is required of all such income derived from or received within the 12 months of such calendar year, and the return is for a period of 12 months.

The court held that a return was for a fractional part of a year only when the taxpayer makes a short-period return on account of a voluntary change in his accounting period, or where the taxable period is terminated by the Commissioner under the provisions of section 250 (g). All other returns were held to be returns for a full year.

While this case involved returns of an individual and his estate, the reasoning is equally applicable to corporations. If section 226 is not applicable to the case of an individual taxpayer who dies before the expiration of his taxable year, section 232 does not make section 226 applicable to the case of a corporate taxpayer which ceased to exist before the expiration of its taxable year.

The *Bankers' Trust Co.* case was decided under the Revenue Act of 1921, but the pertinent provisions of the Revenue Act of 1918 are the same in so far as the determination of whether the petitioner's return in the present case was a return for a full taxable year or a fractional part of a year is involved.

While the corporation was dissolved on March 31, 1919, it was not required to file its return until the end of its taxable year, which in this case was the calendar year. Section 227 of the Revenue Act of 1918 reads in part as follows:

(a) That returns shall be made on or before the fifteenth day of the third month following the close of the fiscal year, or, if the return is made on the basis of the calendar year, then the return shall be made on or before the fifteenth day of March.

Section 200 of the Revenue Act of 1918 reads in part as follows:

The term "taxable year" means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under section 212 or section 232. The term "fiscal year" means an accounting period of twelve months ending on the last day of any month other than December.

The Revenue Act of 1918 contains no provision requiring a corporation to file a return at any other time than as provided in section 227, excepting under the provisions of section 226 or section 250 (g). It could have waited until the end of the twelve-month period and until the fifteenth day of the third month thereafter to file its return.

In view of the foregoing, it is our opinion that the petitioner's return, in which was included the income for the period from January 1 to March 31, 1919, the date of its dissolution, was not a return

for a fractional part of a year but was for a full taxable year of twelve months, and that it is entitled to the full specific exemption of $3,000.

With respect to the excess-profits credit the statute provides for a credit of 8 per cent of the average invested capital for the taxable period. The taxable period being the twelve-month period for which the return was filed, the invested capital must be averaged over the twelve-month period. This is not inconsistent with the decision in the case of *Strong* v. *United States, supra*. There the average invested capital for the year was admitted. The court said:

When the facts are found to be, as admitted here, that the average invested capital for the taxable year is a given sum, the language of the statute plainly prescribes the method to be pursued in computing the amount of taxes * * *.

The question of invested capital was not involved in the *Bankers' Trust Co.* case, but since the taxable year is twelve months, as the court there held, the statute plainly provides that it is over that period that the invested capital is to be averaged. There are two provisions of the statute by virtue of which invested capital may be reduced. The first is the provision that the invested capital for any period shall be the average invested capital for such period, and the second is that in the case of returns for a fractional part of a year the invested capital shall be the same fractional part of such average invested capital. The latter provision has no application here because the return was not for a fractional part of a year but for a full year, but the first provision must be given effect. In the case of the specific exemption of $3,000, there is only one provision of the statute by which it may be reduced, and that has application only in the case of a return for a fractional part of a year. The burden of proof is on the petitioner to show that the determination of the Commissioner is incorrect. That determination is not shown to be incorrect, although we hold that the return was not for a fractional part of a year. No evidence was introduced that the assets were not entirely distributed when the corporation was dissolved.

The Louisiana statutes (Act 267 of 1914, sec. 30) provide as follows:

All corporations, whether they expire by limitation or are otherwise dissolved, shall be continued as bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to liquidate their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established.

In the absence of evidence that the assets were not distributed and that the determination of the Commissioner was erroneous as to the

amount of the invested capital when averaged over the taxable year, we affirm his determination in that respect. When the invested capital is averaged for the twelve-month period for which the return was filed, since there is no evidence that there were assets on hand after the dissolution which were not distributed, the same result is reached with respect to the average invested capital for the taxable year as was reached by the Commissioner, and the average invested capital for the entire period of twelve months would be three-twelfths of $205,000, or $51,250, as determined by the Commissioner.

*Judgment will be entered on 10 days' notice, under Rule 50.*