PITTSBURGH & WEST VIRGINIA RAILWAY COMPANY AND AFFILIATED COMPANIES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8349. Promulgated March 20, 1931.

*C. F. Taplin, Esq., John L. Steinbugler, Esq.,* and *Leo H. Hoffman, Esq.,* for the petitioners.

*E. C. Algire, Esq.,* for the respondent.

OPINION.

MURDOCK: On August 26, 1925, the Commissioner mailed two deficiency notices in accordance with the provisions of section 274 of the Revenue Act of 1924, each addressed to Pittsburgh Terminal Railroad and Coal Company. The one was to notify the recipient that the Commissioner had determined a deficiency of $59,034.70 for the period of three months ended March 31, 1917, and the other was to notify it of the determination of a deficiency of $228,923.63 for the period of nine months ended December 31, 1917. On the same date the Commissioner sent notices of final determination to the following:

| Taxpayer | Period | Deficiency or overassessment |
| --- | --- | --- |
| Pittsburgh and West Virginia Railway Company. | 9 months ended Dec. 31, 1917. | Overassessment. |
| Wabash Pittsburgh Terminal Railway Company. | 3 months ended Mar. 31, 1917. | Deficiency. |
| Mutual Supply Company. | 3 months ended Mar. 31, 1917. | Deficiency. |

On October 23, 1925, a petition was filed with this Board captioned "Appeal of the Pittsburgh & West Virginia Railway Company and affiliated companies hereinafter mentioned, Wabash Building, Pittsburgh, Pennsylvania." This proceeding was given Docket No. 8349 in the Board's files. The petition stated:

The above named taxpayer, the Pittsburgh & West Virginia Railway Company, its predecessor company, the Wabash Pittsburgh Terminal Railway Company and its affiliated companies, the Pittsburgh Terminal Coal Corporation (formerly Pittsburgh Terminal Coal Company and prior thereto Pittsburgh Terminal Railroad and Coal Company), West Side Belt Railroad Company, Mutual Supply Company, Pittsburgh Terminal Clay Manufacturing Company, and Pittsburgh Terminal Land Company, hereby appeal from the determination of the Commissioner of Internal Revenue set forth in his deficiency letters (Bureau Symbols IT:CR:RR:TJH–60D), dated August 26, 1925, * * *.

The petition was signed by counsel for the petitioners and verified by J. R. Kraus as vice president of the Pittsburgh & West Virginia Railway Company, and as such duly authorized to verify the petition. Subsequently, three amended petitions were filed each of which was verified by F. E. Taplin as president of the Pittsburgh & West Virginia Railway Company and as such duly authorized to verify the petition. There was no change in the amended petitions which would be material hereto.

On November 22, 1930, a motion was filed by the Pittsburgh Terminal Coal Corporation to dismiss the proceeding as to it on the ground that the appeal was taken by the Pittsburgh Terminal Coal Corporation with respect to a deficiency notice addressed to the Pittsburgh Terminal Railroad and Coal Company, a dissolved corporation. This motion was set down for hearing and was heard on December 9, 1930.

The Pittsburgh Terminal Railroad and Coal Company was organized under the laws of the Commonwealth of Pennsylvania on April 28, 1902. On December 30, 1922, the name of this corporation was changed to Pittsburgh Terminal Coal Company. This change was a change in name only. After appropriate corporate action the Pittsburgh Terminal Coal Company and the Meadow Lands Coal Company, in accordance with their agreement of consolidation and merger, were consolidated and merged on December 1, 1924, pursuant to an act of the General Assembly of the Commonwealth of Pennsylvania entitled "An Act authorizing merger and consolidation of certain corporations," approved May 3, 1909, and on December 1, 1924, the Governor of Pennsylvania issued letters patent to the Pittsburgh Terminal Coal Corporation erecting and creating the consolidated corporation. At the time of the consolidation the Pittsburgh Terminal Coal Company had a president, three vice presidents, a secretary, a treasurer, and five directors. Upon consolida-

tion, the officers of the Pittsburgh Terminal Coal Corporation and its board of directors were the same as the officers and board of directors of the Pittsburgh Terminal Coal Company except that it had one less vice president and it had four additional directors. The Pittsburgh & West Virginia Railway Company owned all of the capital stock of the Pittsburgh Terminal Coal Company at the date of the consolidation. It received 80,000 shares of common stock of the consolidated company in exchange for 80,000 shares of the common stock of the Pittsburgh Terminal Coal Company, and 40,000 shares of preferred stock of the consolidated company in exchange for 40,000 shares of preferred stock in the Pittsburgh Terminal Coal Company. The remainder of the common stock of the consolidated corporation, amounting to 40,000 shares, was issued to stockholders of the Meadow Lands Coal Company in exchange for the entire capital stock of that company, consisting of 12,000 shares of common stock. The Pittsburgh Terminal Railroad and Coal Company filed income and excess-profits tax returns for the calendar year 1917 on April 1, 1918. The tax has not been assessed.

From other proceedings pending before us we know that the Commissioner sent a notice of deficiency on June 3, 1926, under section 274 of the Revenue Act of 1926 to the Pittsburgh Terminal Coal Corporation notifying it of deficiencies in tax for the years 1917 to 1919, inclusive, which taxes were imposed upon the Meadow Lands Coal Company, and on March 11, 1927, and on March 7, 1928, he sent notices under section 280 of the Revenue Act of 1926 to the Pittsburgh Terminal Coal Corporation in which he proposed to assess against it as transferee certain taxes due from the Meadow Lands Coal Company for the years 1920, 1921, 1922, and 1923. Thus it is seen that the Commissioner in his latest notices has recognized the fact that the Pittsburgh Terminal Coal Corporation is not the same taxpayer as the two corporations which consolidated and merged under the Pennsylvania statute to form it.

Decision of the questions of whether or not the two old corporations were dissolved and whether or not a new corporation came into existence as the result of the acts detailed above, must depend upon the applicable statutes of the Commonwealth of Pennsylvania and the interpretation placed upon those statutes by the courts of that State. *Hancock* v. *Louisville Railroad Co.*, 145 U. S. 409; *Equitable Life Assurance Society* v. *Brown*, 213 U. S. 25; *Sanborn Brothers*, 14 B. T. A. 1059; *Gideon-Anderson Co.*, 18 B. T. A. 329; *National Bank of Commerce et al.*, 19 B. T. A. 1080. The courts of Pennsylvania have held under the Pennsylvania statute by virtue of which these two corporations consolidated to form the Pittsburgh Terminal Coal Corporation, that the consolidated corporation is a

new corporation, distinct and separate from the old, and that the old are dissolved.

The Supreme Court of the United States, in *Continental Trust Co.* v. *United States*, 259 U. S. 156, has recognized that such is the law in Pennsylvania. Mr. Chief Justice Taft in his opinion stated, at pages 176 and 177:

> The Reading Company by merger with the Reading Railway Company is made to change its character. Under the plan it must comply with the Act of May 3, 1909, Penn. Laws, 408, by which, in merging with the Reading Railroad Company, it becomes a new corporation. *Pennsylvania Utilities Company* v. *Public Service Commission*, 69 Pa. Super. Ct. 612; *Lauman* v. *Lebanon Valley Railroad Co.*, 30 Pa. St. 42, 45; *Clearwater* v. *Meredith*, 1 Wall. 25; *Railroad Company* v. *Georgia*, 98 U. S. 359; *Yazoo & Mississippi Valley Railway Co.* v. *Adams*, 180 U. S. 1; *Shields* v. *Ohio*, 95 U. S. 319.
>
> What is to be done is in fact and law a liquidation of the assets of the old Reading Company. Its stockholders receive their distribution in kind by retention of the stock they held in the old Reading Company as stock in the new Reading Company, * * *

In *Pennsylvania Utilities Co.* v. *Public Service Commission* (cited in the above case) the Court said, *inter alia:*

> Upon consolidation there under the constituent companies are deemed dissolved and their powers and faculties to the extent authorized are vested in the merged company as a new corporation. It is an entity entirely distinct from that of its constituents. It draws its life from the act of consolidation. * * * If it may be said that the constituent is alive, this existence is purely fictional as an aid in determining through that medium, the special character of the grant possessed or, as provided by the merger act, to preserve against the old company any rights which creditors might have, but in legal contemplation this is worked out by its successor in right, the new company. From the time of the completion of said merger the constituent companies ceased to exist. They have no legal identity or corporate existence.

In *Petry* v. *Harwood Electric Co.*, 280 Pa. 142; 124 Atl. 302, certain of the preferred stockholders of the defendant company had instituted a proceeding in equity to enjoin its merger with other companies, or failing that, to obtain the value of their stock. Their stock certificates provided that they should be paid the par value of their stock upon dissolution of the corporation. The merging company contended that they were entitled to only the market value of their stock. The Supreme Court of Pennsylvania, in holding that they were entitled to the par value of their stock upon the merger under the Act of May 3, 1909, P. L. 408, said:

> Did the merger work a dissolution of the company so far as the preferred stockholders are concerned? That in the domain of the practical a dissolution resulted from the merger there can be no doubt; after it was accomplished, the defendant's existence ended, so far as being a going, operating entity is concerned; its property and good will passed into the control and ownership of the new corporation, and it ceased to do business. The effect was to wipe out the merging companies and fuse them all into the new one created.

Cf. *R. D. Musser*, 2 B. T. A. 1031; *Gideon-Anderson Co., supra; Standard Silica Co.*, 22 B. T. A. 97.

The respondent argues in his brief that the Pittsburgh Terminal Coal Corporation is liable for deficiencies in taxes imposed upon its predecessor corporation. We have no doubt of the correctness of this contention as a general proposition. But Congress has never provided, unless it be in section 283 (b) of the Revenue Act of 1926, that, under circumstances such as are here present, the one liable for the tax, although that one has not received any deficiency notice from the Commissioner, can file a petition with this Board which will give us jurisdiction over such a proceeding. Counsel for the respondent, in support of his contention, might have cited section 283 (b) of the Revenue Act of 1926, which provides:

If before the enactment of this Act any person has appealed to the Board of Tax Appeals under subdivision (a) of section 274 of the Revenue Act of 1924 * * * and the appeal is pending before the Board at the time of the enactment of this Act, the Board shall have jurisdiction of the appeal. * * *

In *United Paper Co.*, 4 B. T. A. 257, the Commissioner sent a deficiency notice to the taxpayer on October 3, 1925. The taxpayer filed a petition with the Board on December 3, 1925, which was not within sixty days from the date of the mailing of the deficiency notice, and the Board was without jurisdiction. After the enactment of the Revenue Act of 1926 the Commissioner moved to dismiss the petition because the Board had no jurisdiction. The petitioner claimed that the Board had jurisdiction under the above quoted provision of section 283 (b) of the Revenue Act of 1926. We held that inasmuch as the petition was not filed within the time prescribed by subdivision (a) of section 274 of the Revenue Act of 1924, there was no appeal taken under that section; the act of filing the appeal had no validity or significance; and therefore, no appeal was pending at the time of the enactment of the Revenue Act of 1926. The case was dismissed for lack of jurisdiction.

In *Southern Pacific Company et al.*, 21 B. T. A. 990, a somewhat similar situation arose with the same result. A withholding agent had been notified not of a statutory deficiency, but of a collateral liability, and had filed a petition with the Board prior to the enactment of the Revenue Act of 1926. We held that this was not a notice under section 274 and, therefore, we had no jurisdiction under section 283. In this connection we said:

Generally speaking, section 283 prevented the lapse of jurisdiction already existing, but it did not purport to validate proceedings presumptuously but invalidly begun.

It is apparent from the legislative history of section 283, particularly subdivision (b) thereof, that the framers of the Act did not

intend that under the 1926 Act we should have jurisidiction of a proceeding such as this unless we had jurisdiction of the proceeding under the Revenue Act of 1924. In the Conference Committee Report it is said: "The Board shall retain jurisdiction." No more than a retention of jurisdiction was intended.

The jurisdiction of this Board has been prescribed by Congress. Where a deficiency notice has been sent out under section 274 and where the taxpayer to whom that deficiency notice was sent has filed a petition with the Board, the Board has jurisdiction to consider and decide the issues raised in that proceeding, but where a deficiency notice under section 274 was mailed to one taxpayer corporation and another corporation, not the taxpayer corporation, files the petition with this Board, we have no jurisdiction. See *Gideon-Anderson Co.*, *supra*, and cases there cited. At the time of the enactment of the Revenue Act of 1926 we had no jurisdiction over the proceeding which was attempted to be instituted by the present petition as to the Pittsburgh Terminal Coal Corporation. The corporation to which the deficiency notice was sent had not filed the petition and was not a party to the petition which had been filed. It was not before us. The corporation which had filed the petition had not received a deficiency notice under section 274 (a) of the Revenue Act of 1924, and it was not the taxpayer. Therefore, no appeal was pending at the time of the enactment of the Revenue Act of 1926, and we do not acquire jurisdiction of this proceeding by reason of section 283 (b) of that Act.

> *An order of dismissal as to the Pittsburgh Terminal Coal Corporation will be entered.*