THE PITTSBURGH & WEST VIRGINIA RAILWAY COMPANY, AS SUCCESSOR TO WABASH-PITTSBURGH TERMINAL RAILWAY COMPANY AND WEST SIDE BELT RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 72157, 72158.    Promulgated May 31, 1934.

*C. F. Taplin, Esq.*, and *Leo H. Hoffman, Esq.*, for the petitioner. *Allin H. Pierce, Esq.*, and *Irving M. Tullar, Esq.*, for the respondent.

848

OPINION.

LANSDON : The petitioner contends that the respondent erroneously determined that the West Side Belt Railroad Co., the Wabash-Pittsburgh Terminal Railway Co., and the Pittsburgh Terminal Railroad & Coal Co. were members of an affiliated group during the taxable period; that each was a separate corporation in existence during the entire year 1917, and entitled to make a separate income tax return; and that if such facts are established by the record the deficiency notice relating to tax liability from January 1 to March 31 is not a notice of deficiency for any taxable period of the two companies and, therefore, fails to establish jurisdiction in this Board to redetermine the deficiencies thus asserted in error. On the basis of these contentions, petitioner requests the Board to dismiss both proceedings and render decisions of no deficiencies.

The respondent has determined that the two corporations here involved were members of an affiliated group that should have made a consolidated return for the period under review. The facts show stock ownership sufficient to sustain the respondent's determination that a class A affiliation existed at least until January 24, 1917. At the hearing counsel for petitioners asserted that on that date all the stock of the Pittsburgh Railway Terminal & Coal Co. was sold at auction to a stranger to the affiliated group. On this contention the respondent demanded strict proof. The only evidence of such sale consisted of certain oral statements by the receiver of the Wabash-Pittsburgh Terminal Railway Co. and an offer of notice that the

stock would be sold at public auction on such date. Since transfer of title to stock is evidenced either by endorsement of stock certificates or by transfer entries on stock records, neither of which was proved for the record, we conclude that petitioners have failed to prove any change in stock ownership as of January 24, 1917.

Counsel for petitioner also argues that the facts show that the several corporations were not engaged in a closely related business, as provided in section 1331 of the Revenue Act of 1921.[1] The Revenue Act of 1917 contains no provision requiring or authorizing affiliation and counsel for petitioner argues that section 1331 is not retroactive. The language of this section disposes of the argument on this contention. In this connection petitioner also argues that if section 1331 of the Revenue Act of 1921 is retroactive, the Board should hold that the provisions thereof are unconstitutional. This question has been decided adversely to the contention of the petitioner. *National Candy Co.* v. *United States*, 67 Ct. Cls. 74; certiorari denied, 280 U. S. 582.

In conformity with our conclusion above, it remains only to determine whether the corporations involved were engaged in a closely related business. It is not disputed that as to ownership of stock this was true, at least prior to January 24, 1917. The two railway companies were engaged in transporting freight and passengers as common carriers. The coal company produced and marketed coal, all of which was shipped over the lines of the railroad companies whose tracks traversed its properties. Much of the coal was purchased by the railroad companies for their own use as fuel, but at the prevailing market prices. Even so, the situation was

---

[1] SEC. 1331. (a) That Title II of the Revenue Act of 1917 shall be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of domestic corporations and domestic partnerships that were affiliated during the calendar year 1917.

(b) For the purpose of this section a corporation or partnership was affiliated with one or more corporations or partnerships (1) when such corporation or partnership owned directly or controlled through closely affiliated interests or by a nominee or nominees all or substantially all the stock of the other or others, or (2) when substantially all the stock of two or more corporations or the business of two or more partnerships was owned by the same interests: *Provided,* That such corporations or partnerships were engaged in the same or a closely related business, or one corporation or partnership bought from or sold to another corporation or partnership products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or one corporation or partnership in any way so arranged its financial relationships with another corporation or partnership as to assign to it a disproportionate share of net income or invested capital. For the purposes of this section, public service corporations which (1) were operated independently, (2) were not physically connected or merged and (3) did not receive special permission to make a consolidated return, shall not be construed to have been affiliated; but a railroad or other public utility which was owned by an industrial corporation and was operated as a plant facility or as an integral part of a group organization of affiliated corporations which were required to file a consolidated return, shall be construed to have been affiliated.

(c) The provisions of this section are declaratory of the provisions of Title II of the Revenue Act of 1917.

favorable to such companies, since they were able to secure their fuel supplies from a corporation owned by the same interests, without payment of freight charges other than to themselves. In these circumstances, we think, the determination of the respondent must be affirmed. The motion to dismiss because the deficiency letters were issued for the wrong period is denied.

The petitioner also contends that the Pittsburgh & West Virginia Railway Co. is not a successor to the Wabash-Pittsburgh Terminal Railway Co. and the West Side Belt Railroad Co., and, therefore, not liable for the debts of such corporations. Without any examination of the alleged facts upon which this contention is based, it is enough to point out that the deficiency notices were mailed in care of the Pittsburgh & West Virginia Railway Co., that service of such notices was accepted, and that appeals were filed by it as successor to the two corporations involved. In these circumstances it cannot now be heard to argue that it is not a successor corporation, liable for the obligations of its predecessors, as determined by the respondent. *Burnet* v. *San Joaquin Fruit & Investment Co.*, 52 Fed. (2d) 123; *Commissioner* v. *New York Trust Co.*, 54 Fed. (2d) 463; *Pittsburgh Terminal Coal Corp.* v. *Heiner*, 56 Fed. (2d) 1072; *Shamrock Oil Co.*, 29 B.T.A. 910. This motion to dismiss is likewise denied.

Petitioner claims that the Wabash-Pittsburgh Terminal Railway Co. is entitled to depreciation allowances for the taxable period in respect of bridges, masonry, buildings, and machinery in the amount of $34,880.04. Depreciation is a question of fact. The first element in the computation of any allowance therefor is the cost or the 1913 value of the assets used in a trade or business. The property here involved was acquired over a period of nearly 20 years and to a great extent from prior corporations. The record contains no facts upon which we can find the cost at acquisition of the assets as to which depreciation allowances are now claimed. Even if the merger or consolidation of the prior companies into the petitioner corporation was effected in such a way that the successor became entitled to use the predecessor's bases for computing depreciation, the evidence of cost is still quite unsatisfactory.

A valuation as of January 1, 1917, made by the Interstate Commerce Commission, presumably for rate-making purposes, is somewhat lower than the book costs of all the tangible properties of the Wabash-Pittsburgh Railway Co., and it breaks down the whole valuation into separate categories, which include the groups in question. Petitioner undertakes to determine the cost of each group by multiplying the Interstate Commerce valuation thereof by 1.09, a factor which is developed by dividing the whole book cost by the

valuation as a whole. The infirmity of this evidence is obvious. The valuations of the Interstate Commerce Commission are admittedly the reproductive cost based on the prices of labor and material prevailing in 1910 to 1914, and cannot be regarded as persuasive evidence of actual cost. The same infirmity is inherent in the evidence offered in support of the claim of the West Side Belt Railroad Co. That the petitioners owned and used some part or all of the assets in their business in the taxable year may be admitted. The denial of any depreciation allowances by the Commissioner may have been a harsh ruling, but it was based on the fact that the petitioners had no records to support their claims. Even if the respondent is proved wrong, the petitioners have not established the correct bases for depreciation and their claims must be disallowed.

Petitioners contend that the respondent has erroneously computed the invested capital of the affiliated group in the taxable period. They argue that their entire invested capital should be used as an element in the computation of the excess profits deduction for the three-month period under review, instead of one fourth thereof. It is perfectly clear that the method contended for by the petitioner would result in a computation applicable to income for an entire year. As the capital here involved was used for only three months, the deduction is only one fourth of what it would be for an entire year. Petitioners also contend that in the computation of their invested capital the respondent erroneously offset the surpluses of some of the affiliated corporations by the deficits of others. No evidence on this question is in the record; therefore, any finding of fact in regard thereto is impossible.

The respondent originally allocated all the tax due by the consolidated group to the Pittsburgh Terminal Railroad & Coal Co. That corporation afterwards became insolvent and its tax liability was compromised for an amount much less than that determined by the respondent. As a condition precedent to his acceptance of the compromise, he required all the members of the affiliated group to sign a written stipulation to the effect that the compromise related only to the tax liability of the Pittsburgh Terminal Railroad & Coal Co., and that the excess profits taxes determined as to the group of affiliated corporations might be reallocated and determined as if no allocation had been previously made. This stipulation is in evidence. It indicates that the petitioners agreed to ignore the original allocation of all taxes due in the taxable period. At any rate there is no evidence that the affiliated companies had any allocation agreement. There is no such agreement in the files of the respondent and the petitioners have failed to show that one ever

existed. If there was no agreement, the fact that the Commissioner originally erroneously allocated all the tax to one of the members of the group does not preclude him from allocating the deficiencies in proportion to the income of the several corporations as required by law. *James Couzens*, 11 B.T.A. 1040. The respondent's motion for increased deficiencies is granted.

*Decision will be entered under Rule 50.*