66

THE PITTSBURGH & WEST VIRGINIA RAILWAY COMPANY, AS SUC-
CESSOR TO WEST SIDE BELT RAILROAD COMPANY, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE PITTSBURGH & WEST VIRGINIA RAILWAY COMPANY, AS SUC-
CESSOR TO WABASH-PITTSBURGH TERMINAL RAILWAY COMPANY,
PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RE-
SPONDENT.

Docket Nos. 72157, 72158. Promulgated February 14, 1935.

*C. F. Taplin, Esq.,* and *Leo H. Hoffman, Esq.,* for the petitioner.
*Allin H. Pierce, Esq.,* and *Irving M. Tullar, Esq.,* for the re-
spondent.

OPINION.

BLACK: This is a reconsideration of our Division report promulgated May 31, 1934 (30 B. T. A. 843), which involved proceedings that grew out of proceedings originally commenced at Docket No. 8349. The caption of the petition in Docket No. 8349 was "Appeal of The Pittsburgh & West Virginia Railway Company and Affiliated Companies Hereinafter Mentioned ", and in the opening paragraph the petition recited in part as follows:

The above named taxpayer, The Pittsburgh & West Virginia Railway Company, its predecessor company, the Wabash Pittsburgh Terminal Railway Company, and its affiliated companies, the Pittsburgh Terminal Coal Corporation (formerly Pittsburgh Terminal Coal Company, and prior thereto Pittsburgh Terminal Railroad & Coal Company), West Side Belt Railroad Company, Mutual Supply Company, Pittsburgh Terminal Clay Manufacturing Company, and Pittsburgh Terminal Land Company, hereby appeal from the determination of the Commissioner of Internal Revenue set forth in his deficiency letters * * * dated August 26, 1925 * * *.

The Commissioner determined deficiencies as follows:

*Period January 1, 1917, to March 31, 1917.*

| | | |
|---|---|---|
| Wabash-Pittsburgh Terminal Railway Co | $2, 199. 57 | Income tax only |
| West Side Belt Railroad Co | 1, 789. 48 | Income tax only |
| Mutual Supply Co | 103. 24 | Income tax only |
| Pittsburgh Terminal Railroad & Coal Co | 59, 034. 70 | Income and excess profits taxes |

*Period April 1, 1917, to December 31, 1917.*

| | | |
|---|---|---|
| Pittsburgh Terminal Railroad & Coal Co | $228, 923. 63 | Income and excess profits taxes |

The respondent in arriving at the above mentioned deficiencies had determined that the Wabash-Pittsburgh Terminal Railway Co. (hereinafter called the Wabash Co.) was the parent company of the affiliated group for the three-month period and that the petitioner, the Pittsburgh & West Virginia Railway Co., was the parent company of the affiliated group for the nine-month period, the petitioner having taken over the major properties of the Wabash Co. at midnight on March 31, 1917. In his determinations of August 26, 1925, the respondent allocated to the Pittsburgh Terminal Railroad & Coal Co. all of the excess profits taxes due on the consolidated net income of the two affiliated groups.

On March 20, 1931, a report was promulgated (see 22 B. T. A. 876) holding that an order should be entered dismissing the petition " as to the Pittsburgh Terminal Coal Corporation " for lack of juris-

diction, on the ground that the Pittsburgh Terminal Coal Corporation was an entirely separate and distinct corporate entity from the Pittsburgh Terminal Railroad & Coal Co.

On September 19, 1931, the respondent filed in Docket No. 8349 a petition for review in the United States Circuit Court of Appeals as a result of our report promulgated and published at 22 B. T. A. 876, *supra*. This appeal was dismissed by the Third Circuit on April 19, 1933.

On April 11, 1933, an order was entered in Docket No. 8349, reading in part as follows:

After due consideration permission is hereby granted to Pittsburgh & West Virginia Railway Company, as successor to the Wabash-Pittsburgh Terminal Railway Company, to West Side Belt Railroad Company, and to the Mutual Supply Company, each, to file on or before May 10, 1933, at a new docket number, a separate amended petition based upon the notice of deficiency received by it, for the period January 1, to March 31, 1917, in accordance with the Revenue Acts and the Board's Rules of Practice. If any petitioner fails to take proper or timely advantage of the permission thus granted, the respondent may move for dismissal or for such relief as he deems appropriate. If proper amended petitions are timely filed, the respondent may have the usual time within which to answer or otherwise move with respect thereto.

On April 18, 1933, a written stipulation was entered into in Docket No. 8349, paragraph 2 of which is as follows:

That the Board may determine a deficiency against the Mutual Supply Company for the fiscal period January 1, 1917, to March 31, 1917, in the amount of $103.24; and that it may dismiss the proceeding so far as it relates to the Mutual Supply Company for the period April 1, 1917, to December 31, 1917, for the reason that no deficiency was asserted against said company for that period, and that the Board, therefore, is without jurisdiction.

On April 25, 1933, we entered a decision in Docket No. 8349 in accordance with the stipulation referred to in the preceding paragraph. Thus there was left for our further consideration and determination only the tax liabilities of the Wabash Co. and the West Side Belt Railroad Co. (hereinafter referred to as the West Side Belt) for the period January 1 to March 31, 1917. In accordance with our order entered April 11, 1933, petitioner, on May 9, 1933, filed a separate petition for itself " as successor to " each of these two remaining companies, which petitions were docketed as Nos. 72157 and 72158.

Subsequent to the Board's dismissal of the proceeding against the Pittsburgh Terminal Coal Corporation, already referred to herein, the tax liability of the Pittsburgh Terminal Railroad & Coal Co. was settled for an amount less than the deficiencies originally determined. As has already been pointed out, respondent, in his determination of deficiencies for the taxable periods, allocated all excess profits taxes to the Pittsburgh Terminal Railroad & Coal Co.

However, in his amended answers filed in Docket Nos. 72157 and 72158, respondent affirmatively pleaded that there was no inter-company agreement requiring that all the excess profits tax should be allocated to Pittsburgh Terminal Railroad & Coal Co. and that in conformity with the law this excess profits tax should be allocated to each member of the affiliated group in proportion to its net income, and he moved to increase the deficiencies against petitioner in the respective amounts of $3,269.29 and $4,018.53 on account of excess profits tax properly allocable to petitioner.

These issues raised in Docket Nos. 72157 and 72158 were made the subject of our division report promulgated May 31, 1934 (30 B. T. A. 843), and it is this report we now have under reconsideration.

Petitioner's motion for reconsideration challenges our division report promulgated May 31, 1934, on eight separate grounds. For reasons which will appear later in this opinion it will be necessary for us to consider only two of such grounds, which, as stated by petitioner, are as follows:

A. The Board of Tax Appeals does not have jurisdiction where the deficiency letters cover the fractional portion of the year, namely, from January 1, 1917, to March 31, 1917, inclusive, instead of the whole year 1917. Therefore, since the letters cover the improper period, orders of no deficiency should be entered.

   *        *        *        *        *        *        *

D. Assuming that affiliation were proper, the determination of invested capital for the period January 1, 1917, to March 31, 1917, inclusive, was incorrect in the following particulars:

   *        *        *        *        *        *        *

3. Refusal to allow the full average invested capital of the alleged affiliated group for the three-month period begun January 1, 1917, and ended March 31, 1917.

Under assignment of error (A) petitioner contends that if any one of the corporations included in the affiliation for the period January 1 to March 31, 1917, was in existence beyond March 31, 1917, the deficiency notice in question, being for only a three-month period, as to it, would be for an improper period; and that the Board would be deprived of jurisdiction of any period beyond March 31, 1917, citing *Sweets Co. of America, Inc.*, 12 B. T. A. 1285, after our first decision (entered July 17, 1928) in that case had been reversed and remanded by the Second Circuit in *Sweets Co. of America, Inc. v. Commissioner*, 40 Fed. (2d) 436.

In the *Sweets Co.* case the respondent had determined a deficiency against the petitioners for the six-month period ending June 30, 1919, which deficiency we originally approved. Upon appeal the Second Circuit held that the correct taxable period was a ten-month

period ending October 31, 1919, and remanded the cause for further proceedings. Further proceedings were had pursuant to the court's decree, and in our final decision we decided that there was no deficiency for the period January 1 to June 30, 1919 (the only period before us), and that the Board never acquired jurisdiction over the four months from July 1 to October 31, 1919, because no deficiency had been determined for that period.

Under section 240 of the Revenue Act of 1918, corporations which were affiliated were required to file consolidated returns " for the purposes of this title and Title III ", that is, for " Income Tax " purposes and also for " War-Profits and Excess-Profits Tax " purposes. Under the Revenue Acts of 1916 and 1917, corporations, whether or not affiliated, were required to file separate returns for income tax purposes, and, if affiliated, were required, by virtue of section 1331 of the Revenue Act of 1921, relating to consolidated returns for the year 1917, to file a consolidated return only for the purposes of the war excess profits tax. See *Trustees for Ohio & Big Sandy Coal Co.*, 15 B. T. A. 273; *Clinchfield Navigation Co.* v. *United States*, 66 Ct. Cls. 589.

In the first case mentioned two corporations, the Ohio & Big Sandy Coal Co. and the United Thacker Coal Co., were affiliated from April 30 to December 20, 1917. The Ohio & Big Sandy Coal Co. kept its books and made its returns on the basis of a fiscal year ended April 30 and was dissolved on or about December 29, 1917. The United Thacker Coal Co. kept its books and made its returns on the basis of a fiscal year ended June 30, and continued in existence after the close of its fiscal year ended June 30, 1918. In holding that two separate tax periods existed, that is, one for the purposes of the income tax and one for the purposes of the war excess profits tax, we said:

* * * In this case, the Ohio & Big Sandy and the United Thacker were held to be affiliated for excess-profits-tax purposes for the period April 30, 1917, to December 20, 1917, and, accordingly, a consolidated return for such purpose and for such period was required. That it comprehended a period less than 12 months, or that it did not coincide with the fiscal year of the United Thacker is immaterial; *a separate tax status for excess-profits-tax purposes existed for this period.* The action of the Commissioner in computing an excess-profits tax on the basis of a period of 7 months and 20 days is accordingly sustained.

The Commissioner, however, determined *not only the excess-profits tax* on the basis of 7 months and 20 days, *but also the income tax* for both the Ohio & Big Sandy and the United Thacker for the same period. No great objection is made to this action in so far as Ohio & Big Sandy is concerned, since the end of the affiliation period was likewise the approximate end of its corporate existence, *but objection is made in so far as United Thacker is concerned, and as to this we are of the opinion that the Commissioner was in error.* It it true,

as pointed out by the Commissioner, that the income tax for the United Thacker was computed on its separate income for the period of 7 months and 20 days, and not on the consolidated net income, but wherein lies authority for the computation of income tax to this company on the basis of such a period? We think no authority to do so exists. *The affiliation in 1917 is recognized for excess-profits tax only, and whatever separate tax status arose on account of the affiliation was for this purpose and no other. The income tax must be computed as if this affiliation never existed.* In the case of the United Thacker, its taxable period, for income-tax purposes, did not begin on April 30, 1917, nor did it end on December 20, 1917; its income tax would be computed on the basis of a fiscal year ended June 30.

In view of the foregoing, we are of the opinion that to the extent that the deficiency in the case of the United Thacker arises from the determination of an income tax for the period April 30, 1917, to December 20, 1917, such deficiency is in error. That is, the correct deficiency for this period, in so far as it pertains to United Thacker, is the difference between the excess-profits-tax liability as determined hereunder and the excess-profits tax as paid, if any, for the same period on account of returns previously filed. [Italics supplied.]

The Ohio & Big Sandy case was taken to the Fourth Circuit, but not on this point. See *Trustees For Ohio & Big Sandy Coal Co.* v. *Commissioner*, 43 Fed. (2d) 782.

In *Clinchfield Navigation Co.* v. *United States, supra*, the plaintiff and another corporation were affiliated. The plaintiff kept its books on a calendar year basis and filed a return for " income tax " purposes for the calendar year 1917. The parent corporation kept its books on the basis of a fiscal year ending June 30, and filed a consolidated return for " war excess profits tax " purposes for the period January 1 to June 30, 1917. The Commissioner did not question the correctness of filing a consolidated war excess profits tax return for the six-month period ending June 30, 1917, but required plaintiff to make its income tax return and pay its income taxes on a six-month period ending June 30, 1917, to conform with the same period for which the consolidated war excess profits tax return was filed. The Court of Claims held that the Commissioner erred in such requirement, giving substantially the same reasons for its conclusion as the Board gave in the *Ohio & Big Sandy* case, *supra*.

In the instant proceedings the West Side Belt was organized in 1902 and continued in existence until it was merged with the petitioner on December 31, 1928. On or about April 30, 1918, it filed with the collector at Pittsburgh a return of annual net income for the calendar year 1917. The respondent determined that in place of the one return for the calendar year 1917 the West Side Belt should have filed two returns for " income tax " purposes, one for the three-month period ended March 31, 1917, and one for the nine-month period ended December 31, 1917. On this basis the respondent determined a deficiency in income tax of $1,789.48 against the West Side Belt for the three-month period ended March 31, 1917.

We believe this determination to be erroneous. It is our opinion that the income tax liability of the West Side Belt should have been determined on the basis of the full calendar year 1917. *Trustees for Ohio & Big Sandy Coal Co., supra; Clinchfield Navigation Co.* v. *United States, supra.* The respondent did not determine a deficiency against the West Side Belt for the nine-month period ended December 31, 1917. Therefore, we never acquired jurisdiction over this latter period, and, since the three-month period is an improper period for the purpose of determining the income tax liability of the West Side Belt, a decision of no deficiency in income tax for this period will be entered. *Elgin Compress Co.*, 31 B. T. A. 273; *Sweets Co. of America, Inc., supra.* Whether there is a deficiency in war excess profits tax against the West Side Belt for the period January 1 to March 31, 1917, will be discussed later in this opinion.

Although a slightly different situation exists in the case of the Wabash Co., we believe that the same result must be reached as to the deficiency of $2,199.57 in income tax determined against that company for the three-month period ended March 31, 1917, as was reached in the case of the West Side Belt for the same period. The Wabash Co. was organized in 1904. In 1916 its properties were sold at a judicial sale and were purchased by the corporation's creditors, who in turn incorporated two new companies, namely, the Pittsburgh & West Virginia Railway Co. of West Virginia and the Pittsburgh & West Virginia Railway Co. of Pennsylvania. On January 29, 1917, these two new corporations were consolidated into a new corporation, the petitioner herein. At midnight on March 31, 1917, the petitioner took over the major portion of the properties of the Wabash Co. The Wabash Co. was not dissolved during 1917, but continued in a state of liquidation until at least March 30, 1921. It did no business as a going concern after March 31, 1917. The record does not show definitely what kind of returns, if any, were filed by or on behalf of the Wabash Co. for the year 1917.

It is our opinion however that since the Wabash Co. was actually in existence during the entire calendar year 1917, it should have filed a return for income tax purposes for the full calendar year. In the case of *Mrs. Grant Smith*, 26 B. T. A. 1178, a corporation was actually dissolved on January 12, 1925, but its affairs remained in the hands of liquidating trustees for the remainder of the year. We held that the Commissioner erred in determining a deficiency against the corporation for the 12-day period.

In G. C. M. 2080, C. B. VI-2-288, it is stated in part:

In a case where a corporation liquidates and dissolves or comes into existence, other than at the beginning or end of the corporation's taxable year, the return required is not a return for a fractional part of a year but a return for a full taxable year of 12 months, regardless of the fact that the period during

which income is received or earned is less than a full year. *Bankers Trust Co. v. Bowers*, 295 Fed. 89; *Louis Hymel Planting and Mfg. Co.*, 5 B. T. A. 910; I. T. 2239—C. B. IV–2, 58.

Since the Wabash Co. was not dissolved during the year 1917, but actually continued in existence for purposes of complete liquidation, cf. *Burnet* v. *Aluminum Goods Manufacturing Co.*, 287 U. S. 544, it would seem that as strong a reason existed for requiring a return for the full calendar year as existed in the *Mrs. Grant Smith* case, *supra*.

We hold therefore that the income tax liability of the Wabash Co. should have been determined on the basis of the full calendar year 1917; that since the respondent did not determine a deficiency against this company for the nine-month period ended December 31, 1917, we have no jurisdiction over this latter period; and that since the three-month period is an improper period for the purpose of determining the income tax liability, a decision of no deficiency in income tax for the period January 1 to March 31, 1917, will be entered.

We will now consider petitioner's ground D (3). We have no doubt but that the respondent was correct in requiring a separate consolidated return for war excess profits tax purposes for the three-month period ended March 31, 1917, since the Wabash Co. ceased to be the parent company on that date. Cf. *Marvel Equipment Co.* v. *Commissioner*, 67 Fed. (2d) 354. Our question here is whether the respondent erred in not allowing the full average invested capital of the affiliated group for the three-month period instead of one fourth thereof. At page 851 of our report now under reconsideration, published at 30 B. T. A. 843, we said:

Petitioners contend that the respondent has erroneously computed the invested capital of the affiliated group in the taxable period. They argue that their entire invested capital should be used as an element in the computation of the excess profits deduction for the three-month period under review, instead of one-fourth thereof. It is perfectly clear that the method contended for by the petitioner would result in a computation applicable to income for an entire year. As the capital here involved was used for only three months, the deduction is only one-fourth of what it would be for an entire year.

The respondent, under sections 201, 203, and 207 of the Revenue Act of October 3, 1917, has determined that the consolidated war excess profits tax of the affiliated group in question for the period January 1 to March 31, 1917, amounted to $42,442.38, which, according to the schedules attached to his deficiency notice, he computed as follows:

*Schedule 6—Invested Capital*

Invested capital disclosed by Bureau letter of Feb. 9, 1923_____ $2,503,750.00
As corrected_____ 2,503,750.00

No change

*Schedule 7—Proof of Invested Capital*

| | |
|---|---:|
| Capital stock | $10,015,000.00 |
| Surplus | None |
| Total, corrected balance sheet beginning of year | $10,015,000.00 |
| Reductions to reduce to (3) months period Jan. 1, 1917, to March 31, 1917, ¾ of $10,015,000.00 | 7,511,250.00 |
| As shown on Schedule No. 6 | $2,503,750.00 |

*Schedule 8—Computation of Excess Profits Tax*

| | | |
|---|---:|---:|
| Consolidated invested capital (Schedule 6) | | $2,503,750.00 |
| Consolidated net income (Schedule 5) | | 385,692.00 |
| | INCOME | TAX |
| Deduction 7%, $175,262.50 plus $750.00 | $176,012.50 | |
| Taxable at 20% | 199,550.00 | 39,910.00 |
| Taxable at 25% | 10,129.50 | 2,532.38 |
| | $385,692.00 | $42,442.38 |

Petitioner contends that during the entire three-month period the affiliated group actually operated upon an invested capital of $10,015,000; that no authority can be found in section 207 of the Revenue Act of October 3, 1917, for reducing the capital of $10,015,000 actually invested in the business to $2,503,750 merely because the taxable period in question is a three-month period rather than a twelve-month period; that no authority can be found in section 203 of the same act for prorating likewise the specific exemption of $3,000 provided for therein; that under section 203, *supra*, the credit shall be at least 7 percent of $10,015,000, plus $3,000, or $704,050, rather than 7 percent of $2,503,750, plus $750, or $176,012.50, as determined by the respondent; and that since the credit of $704,050 is in excess of the consolidated net income of $385,692, there is no war excess profits tax due under section 201 of the act of October 3, 1917.

In support of the above contentions petitioner relies upon *Strong, Hewat & Co.* v. *United States*, 62 Ct. Cls. 67; *Trustees for Ohio & Big Sandy Coal Co.*, 15 B. T. A. 273, 292–293; and T. D. 3848, Cumulative Bulletin V–1, p. 290.

Treasury Decision 3848 was approved subsequent to the decision by the Court of Claims in *Strong, Hewat & Co., supra*, and reads as follows:

Treasury Decision 2689, approved April 1, 1918, is hereby revoked, and article 20 of Regulations 41 is hereby amended to read as follows:

ART. 20. *Computation of tax for period of less than 12 months.*—If a corporation or partnership at any time, either because it has just designated a fiscal year as provided in sections 8 or 13 of the Act of September 8, 1916

(see Income Tax Regulations, arts. 31 and 211), *or for any other reason* [italics here supplied], makes a return for a period of less than 12 months, the deduction will be the full amount allowable for a period of 12 months, i. e., the deductions shall not be prorated in the proportion that the number of months for which the return is made bears to 12 months.

To the same effect is G. C. M. 2080, Cumulative Bulletin VI–2, p. 288.

In *H. R. Mallinson & Co.*, 14 B. T. A. 1124, we said:

Respondent has determined the excess-profits-tax liability of the petitioners for the one-month period ended December 31, 1917, upon the basis of a consolidated net income of $35,705.59, a consolidated invested capital of $152,294.45, and a specific deduction of $500. The invested capital of $152,294.45 is but one-twelfth of the full consolidated invested capital, as determined by the respondent, and the specific deduction of $500 is but one-twelfth of the specific deduction of $6,000 allowed domestic partnerships by section 203 (b) of the Revenue Act of 1917.

Petitioner partnership was dissolved on June 1, 1918, and succeeded by a corporation. Such fact brings this case squarely within the decision of the United States Court of Claims in the case of *Strong, Hewat & Co.* v. *United States, supra*, which was followed by this Board in *Louis Hymel Planting & Manufacturing Co.*, 5 B. T. A. 910, and within the provisions of Treasury Decision No. 3848. The excess-profits-tax liability should be recomputed upon the basis of the full invested capital and the full specific deduction allowed by section 203 of the Revenue Act of 1917.

The respondent, in *Trustees for Ohio & Big Sandy Coal Co., supra*, conceded " * * * that his action in both instances was in error and that no reduction should be made either in invested capital or the specific exemption on account of this determination in 1917 for a period less than 12 months." (15 B. T. A. 273, 293.)

The same rule does not prevail under the subsequent revenue acts wherein Congress made special provision for prorating in case the return was for a period of less than 12 months. In this connection see *Trorlicht-Duncker Carpet Co.*, 22 B. T. A. 466, 473.

Section 203 of the Revenue Act of October 3, 1917, provides in part as follows:

Sec. 203. That for the purposes of this title the deduction shall be as follows, except as otherwise in this title provided—

(a) In the case of a domestic corporation, the sum of (1) an amount equal to the same percentage of the invested capital for the taxable year which the average amount of the annual net income of the trade or business during the pre-war period was of the invested capital for the pre-war period (*but not less than seven* or more than nine per centum *of the invested capital for the taxable year*), *and* (2) $3,000 * * *. [Italics supplied.]

We therefore sustain petitioner in this assignment of error. Since the consolidated net income of $385,692 determined by respondent is less than the credit to which petitioner is entitled under section 203 of the Revenue Act of 1917, it appears that there will be

no war excess profits tax liability of the affiliated group for the period January 1 to March 31, 1917. *Strong, Hewat & Co., supra;* T. D. 3848, *supra; H. R. Mallinson & Co., supra.*

Our holding in our former report sustaining the Commissioner in his disallowance of depreciation claimed by petitioner is affirmed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*