ANNE SCHICK, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket Nos. 3250–63, 3251–63, 3318–63, 3253–63.   Filed January 11, 1966.

*Morris A. Kaplan,* for the petitioners.
*Lionel Savadove,* for the respondent.

FORRESTER, *Judge:* Respondent has determined that petitioners are liable as transferees for a deficiency in the income tax of Schick Enterprises, Inc., for its "taxable year ended January 31, 1959," in the amount of $7,360.14 and an additional deficiency in the amount of $215.70.   Petitioners concede transferee liability but contend that there is no deficiency in the tax of the transferor.   The issues are (1) whether the deficiency determined in the tax of the transferor was for a proper taxable period; (2) whether, under section 337,[2] the gain realized by the transferor upon the sale of a hospital in December 1958 should not be recognized; (3) whether the transferor realized $5,000 income in 1959 with respect to an amount received in 1954 as a rent security deposit; and (4) whether the transferor realized interest income in the amount of $719 during the period December 8, 1958, to January 31, 1959.   Issue (4) was raised by respondent in an amended answer as the basis of his claim for an increased deficiency; under section 6214(a), the burden of proof as to this issue is placed upon respondent.[3]

---

[1] Proceedings of the following petitioners are consolidated herewith : Ben Schick, docket No. 3251–63 ; Irving Blumenfeld, docket No. 3318–63 ; and Naomi Blumenfeld, docket No. 3253–63.

[2] Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as applicable during 1958 and 1959.

[3] Petitioners contend (1) that respondent should not have been permitted to amend his answer to allege that Enterprises completed distribution of its assets to its shareholders on Dec. 1, 1959 ; (2) that respondent should not be permitted to argue that the distribution in liquidation was not completed within 12 months of the adoption of the plan of liquidation ; and (3) that at the least respondent should be made to bear the burden of proving that the distribution was not completed within 12 months of the adoption of the plan.   These contentions are not meritorious.   Certainly respondent's determinations herein were sufficiently broad to cast upon petitioners the burden of proving each element necessary to establish nonrecognition of gain to Enterprises under section 337.   See *C. D Spangler,* 32 T.C. 782 (1959), affd. 278 F. 2d 665 (C.A. 4, certiorari denied 364 U.S. 825 (1960).   Furthermore, petitioners certainly had knowledge of the existence of the assignment throughout the period of respondent's investigation ; having failed to call the document to respondent's attention, they will not now be heard to complain that respondent should be estopped from relying upon it.   We offered petitioners additional time to prepare their defense on this issue, but petitioners declined the offer.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

The transferor, Schick Enterprises, Inc. (hereinafter referred to as Enterprises), an accrual basis taxpayer, filed a Federal income tax return for the period November 1, 1958, to January 31, 1959, with the district director of internal revenue, Jacksonville, Fla. Enterprises was incorporated under the laws of the State of Florida on October 6, 1954; its dissolution was effective December 29, 1959.

Petitioners Anne Schick and Ben Schick are husband and wife and reside in Miami Beach, Fla. Petitioners Naomi Blumenfeld and Irving Blumenfeld are husband and wife and reside in New Hyde Park, Long Island, N.Y. The Schicks and the Blumenfelds will sometimes be referred to hereinafter as petitioners.

Throughout the existence of Enterprises, petitioners were all of the officers and directors of the corporation. Petitioners also owned all of the capital stock of Enterprises, in the following proportions:

| Shareholder | Number of shares | Percent of shares |
| --- | --- | --- |
| Ben Schick and Anne Schick | 25 | 50 |
| Irving Blumenfeld and Naomi Blumenfeld | 25 | 50 |

The business of Enterprises was the ownership and operation of one parcel of real property located in Miami, Fla. The property, known as Bel-Aire Hospital, was leased on an oral lease to Edgewater Hospital, Inc. (hereinafter referred to as Edgewater). Edgewater was a Florida corporation, the stock of which was wholly owned by petitioners. Petitioners conducted the business of their corporations in an informal manner.

Sometime prior to November 1958 Irving Blumenfeld, who is and was then a medical doctor, decided that operation of the hospital was consuming too much of his time. As a result of Irving's desire to devote his full time to his medical practice, petitioners, on or before November 15, 1958, informally agreed to sell the hospital and cease business operations. On November 15, 1958, agreements were entered into for Enterprises to sell the property known as Bel-Aire Hospital and for petitioners to sell their stock in Edgewater. On December 8, 1958, Enterprises sold and transferred title to the hospital property to 162 NE. 49th Street, Inc., a Florida corporation, for the total selling price of $131,255. As part of the consideration for the sale, Enterprises received a purchase-money note and mortgage, dated December 8, 1958, in the amount of $89,327.45. The mortgage provided for interest of 5½ percent, payable quarterly, with the first payment due April 1, 1959. The sale resulted in a net gain to Enterprises, for Federal

income tax purposes, of $23,440.55. The interest payments were timely made for at least the first 1½ years. After the sale, Enterprises did not carry on any business activities.

Prior to the period in controversy herein, Enterprises had filed its income tax returns on an accrual basis for fiscal years beginning November 1 and ending the following October 31. On February 24, 1959, Enterprises filed an income tax return for the period November 1, 1958, to January 31, 1959. The word "FINAL" appeared at the top of the first page of the return, and an attached schedule was entitled "STATEMENT OF LIQUIDATION." The latter listed the purchase-money mortgage as the only asset distributed to the petitioners as sole stockholders. Enterprises, however, did not actually distribute the purchase-money note and mortgage to petitioners until December 1, 1959, the statement on the return to the contrary notwithstanding.

In its return for the period November 1, 1958, to January 31, 1959, Enterprises reported gross income of $1,416.11, consisting of $1,250 rental income and $166.11 "Expense Reimbursement." In his notices of deficiency and transferee liability, respondent determined a deficiency in the income tax of Enterprises "for the taxable year ended January 31, 1959." The deficiency was founded upon respondent's determinations (1) that rental income had been understated by $5,000 and (2) that the gain from the sale of the hospital on December 8, 1958, should have been included in income. By amendment to his answer, respondent claimed an increased deficiency in the amount of $215.70, based upon his determination that Enterprises realized $719 of interest income between December 8, 1958, and January 31, 1959.

OPINION

The first issue is whether the period November 1, 1958, to January 31, 1959, constituted a proper taxable year of Enterprises. Petitioners, as one of their alternative contentions, urge that, if Enterprises did not complete the distribution of its assets to the petitioners until December 1, 1959, then the proper taxable year of Enterprises was the fiscal year ending October 31, 1959. This question is critical, since the only taxable period of Enterprises for which we have jurisdiction is the period November 1, 1958, to January 31, 1959, the period covered by respondent's determinations. See *Columbia River Orchards, Inc.*, 15 T.C. 253 (1950); *Oklahoma Contracting Corporation*, 35 B.T.A. 232 (1937); *Pittsburgh & West Virginia Railway Co.*, 32 B.T.A. 66 (1935).[4] The decisions to the contrary in *August Bel-*

---

[4] *Scofield's Estate* v. *Commissioner*, 266 F. 2d 154 (C.A. 6, 1959), reversing 25 T.C. 774 (1956), is distinguishable since there it was held that the notice of deficiency in fact and in substance, if not in form, covered the entire taxable year and the taxpayer was given adequate notice thereof.

*mont Hotel Co.*, 18 B.T.A. 643 (1930), and *Premier Packing Co.*, 12 B.T.A. 637 (1928), have not explicitly been overruled; they have not, however, been cited for the proposition in question for many years and must be deemed to have been overruled *sub silentio* by the more recent decisions.

The parties, by stipulation, introduced into evidence a copy of an assignment of the purchase-money mortgage and accompanying promissory note received by Enterprises on the sale of the hospital. The assignment, dated December 1, 1959, names Enterprises as the assignor and petitioners as the assignees, one undivided one-half interest being assigned to the Blumenfelds and the other to the Schicks. We have found, on the basis of this assignment and the entire record, that the distribution of note and mortgage by Enterprises was not completed prior to December 1, 1959. The evidence relied upon by petitioners [5] to prove the distribution had occurred before such date is woefully inadequate. The only witness for petitioners, Irving Blumenfeld, showed himself to be almost completely unfamiliar with the details of the corporate operations. In fact, he testified that around the time the hospital was sold petitioners just followed the advice of their lawyer and accountant. Even if, as petitioners contend, Irving received the entire first year's interest from the purchase money note, this would not, in view of petitioners' informal operations, establish a de facto distribution of the note and mortgage prior to December 1, 1959. Under the circumstances, petitioners have not demonstrated that the substance of the transaction was different from its form. We believe that the note and mortgage were distributed on December 1, 1959, the date indicated by the formal assignment.

Section 441(a) provides, "taxable income shall be computed on the basis of the taxpayer's taxable year." Section 441(b)(3),[6] section

---

[5] This case presents the possibility of an unusual application of the rules regarding burden of proof. The date of distribution is a factual question relevant to two issues, (1) nonrecognition of gain under sec. 337 on the sale of the hospital, and (2) the proper taxable year of Enterprises. As to (1), petitioners argue that the distribution occurred on or before Jan. 31, 1959, whereas respondent argues it occurred after such date (specifically, on Dec. 1, 1959). As to (2), the positions of the parties are reversed. If the evidence were in equipoise, it might be argued that the petitioners, upon whom the burden of proof is normally placed, should fail on both issues, even though the distribution did occur and, hence, it is obvious that it was completed either on or before Jan. 31, 1959, or after Jan. 31, 1959. However, we need not and do not consider this intriguing problem, since we are satisfied, from the entire record, that the distribution was not completed until Dec. 1, 1959.

[6] SEC. 441. PERIOD FOR COMPUTATION OF TAXABLE INCOME.

(b) TAXABLE YEAR.—For purposes of this subtitle, the term "taxable year" means—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(3) the period for which the return is made, if a return is made for a period of less than 12 months.

1.441–1(b)(iii), Income Tax Regs.,[7] and section 443(a)(2)[8] provide that the taxpayer's "taxable year" may be a period of less than 12 months if the taxpayer is in existence during only part of what would otherwise be his taxable year. Section 1.443–1(a)(2), Income Tax Regs., provides, in part, that "a dissolving corporation * * * is required to file a return for the short period from * * * [the beginning of its taxable year] to the date it goes out of existence."

The question of whether a corporation has gone out of existence, so as to make its proper "taxable year" a period of less than 12 months, was considered in *United States* v. *Kingman*, 170 F. 2d 408 (C.A. 5, 1948), decided under the 1939 Code. There, the corporation, reporting on the calendar year basis, had ceased doing business on April 3, 1943, and had distributed most of its assets to its sole stockholder; the corporation retained only claims to tax refunds and to U.S. bonds. The Court of Appeals, relying in part upon the predecessor of section 1.6012–2(a)(2), Income Tax Regs.,[9] held that the corporation's proper taxable year for 1943 was the full calendar year rather than a short period of some 3 months. We followed the *Kingman* decision in *Union Bus Terminal, Inc.*, 12 T.C. 197 (1949), affirmed per curiam 179 F. 2d 399 (C.A. 5, 1950). See also Rev. Rul. 56–483, 1956–2 C.B. 933. Although the 1954 Code made some changes in the statutes applied in *Kingman*, such changes do not affect the basic validity of the Court's reasoning.[10]

In the instant case, Enterprises retained a valuable, income-producing asset, the purchase-money note and mortgage, until after October 31, 1959. Applying the rules laid down in *United States* v. *Kingman*,

---

[7] Sec. 1.441–1 Period for computation of taxable income.

(b) *Taxable year.* (1) The term "taxable year" means—

* * * * * * *

(iii) The period for which the return is made, if the return is made under section 443 for a period of less than 12 months, referred to as a "short period."

[8] SEC. 443. RETURNS FOR A PERIOD OF LESS THAN 12 MONTHS.

(a) RETURNS FOR SHORT PERIOD.—A return for a period of less than 12 months (referred to in this section as "short period") shall be made under any of the following circumstances:

* * * * * * *

(2) TAXPAYER NOT IN EXISTENCE FOR ENTIRE TAXABLE YEAR.—When the taxpayer is in existence during only part of what would otherwise be his taxable year.

[9] Sec. 1.6012–2 Corporations required to make returns of income.

(a) *In general* * * *

* * * * * * *

(2) *Existence of corporation.* A corporation in existence during any portion of a taxable year is required to make a return. If a corporation was not in existence throughout an annual accounting period (either calendar year or fiscal year), the corporation is required to make a return for that fractional part of a year during which it was in existence. A corporation is not in existence after it ceases business and dissolves, retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued. If the corporation has valuable claims for which it will bring suit during this period, it has retained assets and therefore continues in existence. * * *

[10] The legislative history of secs. 441 and 443 indicates no intention to make any material changes from the provisions of the 1939 Code. See H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. A156–57 (1954).

*supra; Union Bus Terminal, Inc., supra;* and Rev Rul. 56–483, *supra,* we hold that the proper taxable year of Enterprises was the period November 1, 1958, to October 31, 1959, and not the short period November 1, 1958, to January 31, 1959.

Respondent is not authorized to determine a deficiency for a period less than a taxpayer's proper taxable year. *Oklahoma Contracting Corporation, supra.* Nor does the fact that the determination was made for the same period as was covered by the taxpayer's return prevent petitioners from showing such period not to be a proper taxable year. *Columbia River Orchards, Inc., supra.* Respondent urges that we at least find a deficiency for the period November 1, 1958, to January 31, 1959. However, we have no more authority to make such a determination than does respondent. *Columbia River Orchards, Inc., supra; Pittsburgh & West Virginia Railway Co., supra.* And if, as respondent contends, the return actually filed by Enterprises, being for an improper taxable year, was not such a return as starts the running of the 3-year period of limitations on assessment, the proper procedure would be for respondent to issue a new notice of deficiency for the proper taxable year. See *E. D. Gensinger,* 18 T.C. 122 (1952), affirmed on this point 208 F. 2d 576 (C.A. 9, 1953).

We need not and do not consider the other three issues raised. There being no deficiency for the only period over which we have jurisdiction,

*Decisions will be entered for the petitioners.*