*\* SANDERLING, INC., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT*

Docket No. 7167-73.     Filed July 26, 1976.

---
\* Supplemental Opinion appears at 67 T.C. —— (Nov. 8, 1976).

*Herbert M. Gannet* and *Harvey R. Poe,* for the petitioner.
*William M. Gross,* for the respondent.

FORRESTER, *Judge:* Respondent has determined the following deficiencies in petitioner's income tax plus additions to tax under sections 6651(a) [1] and 6653(a):

| Taxable year | Deficiency | Addition to tax under sec. 6651(a) | Addition to tax under sec. 6653(a) |
|---|---|---|---|
| 3/1/68—2/28/69 | $7,231.81 | $361.59 | $361.59 |
| 3/1/69—12/31/69 | 3,619.03 | 904.76 | 180.95 |
| 1/1/71—4/16/71 | 62,698.34 | 15,674.59 | 3,134.92 |

Concessions having been made, the issues presented for our decision are as follows:

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

(1) Whether this Court lacks jurisdiction in the instant case because the notice of deficiency upon which the petition herein is based was issued for petitioner's incorrect taxable year;

(2) Whether the consents extending the 3-year statute of limitations (Forms 872) are invalid because (a) such consents were not signed by individuals with authority to bind the parties, or (b) recited a different taxable year than that set forth in the notice of deficiency; and

(3) Whether the late filing of petitioner's income tax return was due to "reasonable cause" within the meaning of section 6651(a)(1) so as to preclude the addition to tax provided for under that section.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner was incorporated on February 28, 1963, in the State of New Jersey and was dissolved on October 31, 1969. Petitioner filed its final U.S. Small Business Corporation Income Tax Return (Form 1120-S) for the short period March 1, 1968, to January 22, 1969, with the Middle Atlantic Service Center, Philadelphia, Pa. Pursuant to section 7482(b)(2), the parties have agreed that the decision of this Court may be reviewed by the United States Court of Appeals for the Third Circuit.

At all times relevant herein, the officers of petitioner were as follows:

President [2]—John M. Pillsbury
Secretary—Laurence A. Carton
Treasurer—William A. Sternkopf, Jr.

The board of directors consisted of these same three individuals plus Howard Roberts, Rochford Ern, and John D. Lazarus. All of petitioner's outstanding stock was held in equal proportions by the six directors or their legal representatives.

On November 20, 1968, petitioner adopted a plan of complete liquidation pursuant to section 337. By an agreement of the same date, petitioner and its shareholders designated William A. Sternkopf, Jr. (Sternkopf), and John M. Pillsbury (Pillsbury) as trustees in dissolution for the benefit of the stockholders and creditors of petitioner.

---

[2] At trial, Pillsbury testified that he was vice president of petitioner and that Rochford Ern was president. This is in derogation of the stipulation of facts, but neither party contends this inconsistency to be prejudicial to their respective cases.

On or about December 16, 1968, petitioner filed Form 966[3] with the Internal Revenue Service. Together with this form, petitioner attached a copy of a resolution adopted at a joint meeting of the directors and stockholders adopting a complete plan of liquidation.

On January 22, 1969, petitioner distributed all of its assets to the trustees in dissolution. Such distribution was in complete liquidation and as full payment in exchange for all of its outstanding shares. The shareholders properly reported their respective long-term capital gains in their 1969 income tax returns.

Each shareholder has executed a transferee agreement, Form 2045, and the parties have stipulated that the shareholders are thereby liable as transferees if a deficiency is assessed against petitioner[4] and that the shareholders will be entitled to long-term capital gains deductions for the amount of any transferee liability paid in the year of payment.

Respondent's files contain an application for an employer identification number (Form SS-4) signed by Sternkopf and Pillsbury as "Trustees for Stockholders of Sanderling, Inc." There is no indication as to the date the application was received by respondent. Copies of 1970 and 1971 fiduciary returns (Forms 1041) were submitted to the revenue agent during the audit stage of this case.

Because respondent's agent, Lawrence Long (Long), who handled the examination of petitioner's return, was of the opinion that a corporation was not liquidated until all its assets were turned over to the stockholders, he determined that petitioner was not liquidated until April 16, 1971. Accordingly, the deficiency notice, upon which the petition herein is based, was issued for the following years:[5]

---

[3] Form 966 is entitled "Return of Information to be Filed by Corporations Within 30 Days after Adoption of Resolution or Plan of Dissolution, or Complete or Partial Liquidation."

[4] As we understand Form 2045, it is an agreement whereby the transferees of the transferor's assets agree to pay the income taxes finally determined against the transferor in consideration of respondent's not issuing a statutory notice to and making an assessment against the transferor. Notwithstanding this agreement, respondent issued the statutory notice to and assessed the deficiency against petitioner in the instant case. There is nothing in the record before us to indicate why respondent acted in apparent derogation of the agreement. In any event, the issue of the liability of the shareholders as transferees has not been raised in the instant litigation, and we assume the parties and the shareholders are in agreement on this point.

[5] Even after hearing Long's explanation at trial, it is unclear (but unnecessary to the

Mar. 1, 1968—Feb. 28, 1969
Mar. 1, 1969—Dec. 31, 1969
Jan. 1, 1971—Apr. 16, 1971

Respondent has now conceded that petitioner was liquidated on January 22, 1969, and was not required to make or file returns for periods subsequent thereto, and the parties have stipulated that as the result of their various agreements the only remaining issues before us are:

(1) whether the statute of limitations bars assessment of the agreed deficiency; (2) whether the Court lacks jurisdiction on the ground that the statutory notice was issued for the wrong taxable year; and (3) whether the late filing of petitioner's return was due to reasonable cause so as to preclude an addition to the tax under *Code* sec. 6651(a). * * * The parties further agree that the questions presented above have been appropriately raised in the pleadings. [Stipulation of issues.]

The sole asserted deficiency in the instant case involves a liquidation distribution, on January 22, 1969, of a purchase-money mortgage, which was part of the consideration petitioner had received from the sale of real estate in prior years. Because petitioner had elected the installment method of reporting the gain on the sale of real estate, under section 453(d) long-term capital gain of $154,818 resulted on the disposition of the obligation. This gain was not reported on petitioner's final return, and petitioner concedes that failure to do so resulted in an income tax deficiency. Petitioner's position is that, for reasons discussed *infra,* the assessment of the deficiency is barred.

On May 14, 1969, petitioner mailed its final income tax return for the short period March 1, 1968, to January 22, 1969, and respondent received the return on May 19, 1969. The parties have stipulated that, unless extended by the Forms 872[6] discussed below, the 3-year statute of limitations expired on May 14, 1972. The respondent's statutory deficiency notice herein was mailed to petitioner on June 29, 1973.

There are two Forms 872 which attempt to extend the statute of limitations beyond May 14, 1972. The first was signed by Sternkopf, as described *infra,* on February 25, 1972, and by

resolution of the issues before us) why Long concluded that petitioner had taxable periods Mar. 1, 1969, to Dec. 31, 1969, and Jan. 1, 1971, to Apr. 16, 1971, when petitioner had always operated on a Mar. 1—Feb. 28 fiscal year.

[6] Form 872 is entitled "Consent Fixing Period of Limitation upon Assessment of Income Tax."

Robert Shore (Shore) on behalf of respondent on March 10, 1972. This form purported to extend the statute to October 15, 1972.

The second Form 872 was signed by John Morro (Morro) on June 16, 1972, acting under a power of attorney executed by Sternkopf and Pillsbury on behalf of petitioner. Theodore Roum (Roum) signed the form on behalf of respondent on June 19, 1972. This second Form 872 attempted to extend the statute to June 30, 1973.

Long determined that the first Form 872 should be executed by petitioner because otherwise the statute of limitations would expire before he could complete his examination. Long was of the opinion that Sternkopf had authority to bind petitioner to an agreement extending the statute of limitations because Sternkopf was an officer of petitioner (treasurer) and was the individual who signed petitioner's final return. The typed portions of the form were prepared at Long's direction, and it was mailed to Sternkopf for his signature.

Sternkopf, acting under the belief that he was executing the Form 872 for the purpose of extending the period during which tax could be assessed against petitioner, signed his name and, on the line immediately below his signature, designated his title as "Trustee for Stockholders."

The form was returned to Long who noticed Sternkopf's signature and designated title. Long did not question the capacity in which Sternkopf signed the form. He did not check the applicable New Jersey statutes nor did he consult with Regional Counsel's Office in order to determine the individuals who had authority under New Jersey law to bind a dissolved corporation.

With regard to the second Form 872, which was signed on behalf of petitioner by Morro, both Sternkopf and Pillsbury signed only their names to the power of attorney authorizing Morro to act on petitioner's behalf and did not designate thereon that they were signing in any representative capacity.

Because the group supervisor in the Audit Division who would normally sign Forms 872 on behalf of respondent was on extended sick leave, both of the forms at issue were signed by revenue agents who were orally designated as acting group supervisors.

Morro, who signed the second Form 872 on behalf of petitioner, was a certified public accountant in the State of New

Jersey. As a partner in the accounting firm of William A. Sternkopf & Co., Morro was responsible for compiling the necessary financial data and for preparing and filing petitioner's income tax returns. Morro prepared petitioner's final income tax return for the period ended January 22, 1969. He presented the return to Sternkopf for his signature and, on May 13, 1969, Sternkopf signed the return in his capacity as treasurer of petitioner. On May 14, 1969, Morro signed the return as preparer and, on the same date, mailed the return to the Middle Atlantic Service Center, Philadelphia, Pa.

### OPINION

The first issue we must decide involves petitioner's motion to dismiss for lack of jurisdiction.

At the time the notice of deficiency was issued, respondent's agent, Long, was of the opinion that petitioner was not liquidated until April 16, 1971. Therefore, he determined that petitioner had continued in existence through February 28, 1969, which would have been the close of its normal fiscal year. Accordingly, the first taxable year covered in the notice of deficiency was the year ended February 28, 1969. Subsequently, respondent conceded that petitioner was liquidated on January 22, 1969, and that its taxable year ended on that date.

Petitioner contends that because the notice was issued for its incorrect taxable year this Court is without jurisdiction to redetermine the deficiencies in the present case. We do not agree.

It is clear that we have jurisdiction over the period March 1, 1968, to February 28, 1969, the period covered by respondent's determinations. *Anne Schick,* 45 T.C. 368, 370 (1966). Even though this period was subsequently determined not to be petitioner's correct taxable year, where the notice is based on the taxpayer's final tax period and covers the entire period of the taxpayer's operations, it is a valid determination for that period. *Harvey Coal Corp.,* 12 T.C. 596 (1949). Accordingly, we hold that we have jurisdiction in the instant case.[7]

---

[7] The cases in this area which hold we are without jurisdiction deal with the converse of the instant situation—that is, where respondent issued the statutory notice for a fractional part of taxpayer's fiscal or calendar year only to find that the taxpayer's existence continued past that date. E.g., *Anne Schick,* 45 T.C. 368 (1966); *Columbia River Orchards, Inc.,* 15 T.C. 253 (1950); *Elgin Compress Co.,* 31 B.T.A. 273 (1934). These cases do not hold the notices to be invalid per se by reason of setting forth an incorrect taxable period, but rather that we lack jurisdiction over any period beyond the last date included in the

We next turn to petitioner's contention that the 3-year statute of limitations under section 6501(a) bars the assessment of the deficiency and negligence penalty in the instant case. Petitioner argues that the two Forms 872 purporting to extend the statute were not signed by persons authorized to bind either petitioner or respondent and, thus, such forms were not effective to extend the statute beyond the 3-year period.

The 3-year statute of limitations expired on May 14, 1972. The notice of deficiency was mailed to petitioner on June 29, 1973. Obviously, if *either* of the two Forms 872 executed by the parties is not effective to extend the statute, section 6501(a) bars the assessment of the deficiency and the negligence penalty in the instant case.

Petitioner contends that neither Sternkopf nor Morro (who signed the first and second forms, respectively, on petitioner's behalf) had the power or authority to bind it to the extensions of the statute. Petitioner further urges that neither Shore nor Roum (who signed the first and second forms, respectively, on behalf of respondent) had authority to bind respondent to such extensions. We disagree and hold that both Forms 872 were validly executed.

The question of who has authority to act on behalf of a dissolved corporation is controlled by State law. *United States v. Krueger,* 121 F. 2d 842 (3d Cir. 1941); *Associates Investment Co.,* 59 T.C. 441, 442 (1972); *Helen Epstein,* 17 T.C. 1034, 1036 (1951). Under New Jersey law prior to January 1, 1969, the directors of a dissolved corporation became trustees thereof and effectuated dissolution in that capacity.[8]

Effective January 1, 1969, however, this statute was repealed, and the power to act on behalf of a dissolved New Jersey corporation was vested in the directors as directors rather than as statutory trustees.[9]

---

deficiency notice. *Columbia River Orchards, supra* at 261. In the instant case, however, petitioner's taxable year of Mar. 1, 1968, to Jan. 22, 1969, ended prior to the last date included in the deficiency notice and, therefore, we find these cases distinguishable from the case at hand.

[8] N.J. Rev. Stat. sec. 14:13-5 (1937), provided, in part, as follows:

14:13-5. Directors as trustees for winding up; powers

Upon the dissolution in any manner of any corporation, the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts, as far as such moneys and property shall enable them. * * *

[9] N.J. Stat. Ann. sec. 14A:12-9 (1969), provides, in part, as follows:

The comments of the corporation law revision commissioners describe this statutory change as follows:

This section represents a drastic departure from current New Jersey law. It eliminates the present statutory scheme of voluntary dissolution pursuant to which directors of dissolved corporations become trustees as provided by R.S. 14:13-5. While a substantial number of states have the same scheme of voluntary dissolution as that presently in effect in New Jersey, the trend seems to be in the direction of a dissolution by the directors as directors, rather than as statutory trustees.

Sternkopf signed the Form 872 on February 25, 1972. Petitioner concedes that, as a director, Sternkopf had authority on that date under New Jersey law to act on its behalf. Petitioner contends, however, that, due to this statutory change, Sternkopf did not properly *exercise* such authority because he signed the form in his capacity as trustee for stockholders instead of in his capacity as director.[10] We cannot agree.

14A:12-9. Effect of dissolution

(1) Except as a court may otherwise direct, a dissolved corporation shall continue its corporate existence but shall carry on no business except for the purpose of winding up its affairs by

(a) collecting its assets;

(b) conveying for cash or upon deferred payments, with or without security, such of its assets as are not to be distributed in kind to its shareholders;

(c) paying, satisfying and discharging its debts and other liabilities; and

(d) doing all other acts required to liquidate its business and affairs.

(2) Subject to the provisions of subsection 14A:12-9 (1), and except as otherwise provided by court order, the corporation, its officers, directors and shareholders shall continue to function in the same manner as if dissolution had not occurred. In particular, and without limiting the generality of the foregoing,

(a) the directors of the corporation shall not be deemed to be trustees of its assets and shall be held to no greater standard of conduct than that prescribed by section 14A:6-14; [This section concerns the general liability of corporate directors.]

[10] Actually, for purposes of possessing and exercising authority on behalf of petitioner as a dissolved corporation, Sternkopf never acceded to the legal status of a director-trustee. It is true that, pursuant to an agreement between petitioner's stockholders dated Nov. 20, 1968, he was designated as one of two trustees in dissolution for the benefit of petitioner's creditors and stockholders. However, it is clear that it is State law, and not private agreements, which operates to confer authority to represent a dissolved corporation. Thus, even though both the agreement and the State law conferred authority on Sternkopf, it is the State law to which we must look for the legal grant of authority to represent petitioner as a dissolved corporation.

When we look to the applicable State law, we find that, under the pre-1969 New Jersey statute that created director-trustees, it was not until the moment of dissolution that the directors became trustees and held the corporation's assets in trust for the benefit of creditors and stockholders. N.J. Rev. Stat. Sec. 14:13-5 (1937); *State v. Fidelity Union Trust Co.,* 25 N.J. 387, 136 A. 2d 636 (1957). Thus, Sternkopf never became a statutory trustee under this law because petitioner was not dissolved until Oct. 1, 1969, at which time the law had been repealed and the new statute was in effect.

Although we are not of a mind to either lightly regard or liberally construe the representative capacity in which an agent purports to act on behalf of his principal, we do not think this statutory change can be interpreted so as to divest director-trustees of their power to continue to conduct those activities necessary to wind up a dissolved corporation's affairs. Instead, we think this new statute simply served to change and clarify the fiduciary responsibilities a director has toward the dissolved corporation's creditors and stockholders. We find support for this view from N.J. Stat. Ann. sec. 14A:12-9 (a) (2), which specifically provides that the directors in dissolution shall not be deemed trustees and shall be held to no greater standard of care in effecting the dissolution of a corporation than that standard of care required of corporate directors in general.

Sternkopf was one of petitioner's directors and, as such, he clearly had authority under New Jersey law to bind petitioner to the extension of the statute of limitations. By designating his representative capacity on the Form 872 as a trustee instead of a director, he most certainly misstated his fiduciary relationship toward petitioner's stockholders and creditors. However, we do not think that such misstatement also served to negate his inherent power as a director to exercise authority on petitioner's behalf. Accordingly, we hold that Sternkopf's signature on the first Form 872 served to bind petitioner to an extension of the statute of limitations to October 15, 1972.

The second Form 872 in question was signed on petitioner's behalf by Morro on June 16, 1972, and attempted to extend the statute to June 30, 1973. Morro acted pursuant to a power of attorney by which petitioner purported to grant him the authority, inter alia, to execute consents extending the statute of limitations. Petitioner contends that the power of attorney (Form 2848) did not operate to grant such authority to Morro because Pillsbury and Sternkopf signed the form without reciting the capacity in which they purported to represent petitioner. Petitioner argues that because they failed to designate the proper capacity under which they acted, we should assume that each signed the power of attorney in his capacity as trustee and not as director.

First, for the reasons set forth above, assuming, arguendo, that Pillsbury and Sternkopf signed as trustees in dissolution, we do

not think they would therefore lack the capacity to exercise authority on petitioner's behalf.

Moreover, when an individual is authorized to sign consents on behalf of a principal (as were both Sternkopf and Pillsbury with respect to petitioner) and, in so doing, does not clearly indicate the capacity in which he affixes his signature, we see no reason to conclusively presume that he acted in other than his correct representative capacity. *John M. Eversole,* 46 T.C. 56, 60-61 (1966).

Petitioner also objects to the validity of the two Forms 872 at issue on the ground that they were not signed by individuals who had authority to bind respondent.

Petitioner concedes that the audit group supervisor had the requisite authority to sign the consents. However, because the supervisor was on extended sick leave, both of the forms at issue were signed by revenue agents as "acting group supervisors." Shore, the agent who signed the first form, could not recall who orally designated him to act in this capacity, but testified that either the supervisor did so before he left or that the designation was made by the branch chief. Roum, who signed the second form, stated that he was orally designated by the branch chief.

Petitioner's argument is predicated on the fact that both Shore and Roum were *orally* designated as "acting group supervisors" and that neither had specific *written* authorization to sign consents to extend the statute of limitations. Petitioner contends that, due to the requirement in section 6501(c)(4)[11] that only the Secretary or his delegate sign consents, something more than mere oral designation as "acting group supervisor" should be required to confer upon Shore and Roum the power to bind respondent.

We have recently had occasion to consider a similar argument directed toward notices of deficiencies signed by an Acting Chief, Review Staff. *Thomas J. Wessel,* 65 T.C. 273 (1975). We rejected the argument in that case and we do so here.

---

[11] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

In *Wessel* the Chief, Review Staff (who had proper delegated authority to sign notices of deficiencies), orally designated a senior reviewer to act in his stead while he was on annual leave. The senior reviewer signed certain notices of deficiencies as "Acting Chief, Review Staff." In rejecting petitioner's argument that the Acting Chief did not have proper authority to sign such notices, we held that the Chief had made a valid "designation" of his delegated powers and, as such, the Acting Chief was authorized to sign notices of deficiencies.

Under Internal Revenue Service internal procedures in effect on the dates in question in the instant case, all supervisors and their superiors (with certain exceptions not relevant here) were *delegated* the authority to *designate* an employee to serve as an acting supervisor during the supervisor's absence.[12] This is precisely what occurred in the instant case—on both occasions the designation was made either by the absent supervisor or by his superior. Thus, we think both Shore and Roum performed their actions as the supervisor's "designate" and that such actions were therefore proper and authorized. *Thomas J. Wessel, supra* at 276.

As to petitioner's argument that such designation must be by written appointment, we note that Internal Revenue Service procedures did not so require.[13] Petitioner correctly argues that we need not be bound by such procedures. However, we reiterate our position in *Thomas J. Wessel, supra* at 276, that—"we are not prepared to exact the burdensome formalistic detail of requiring a written designation to acting supervisory personnel each time the incumbent of the position temporarily absents himself."

We are unimpressed by petitioner's attempts to distinguish *Wessel*. First, it argues that in *Wessel* the senior reviewer's job description stated that he was to act as Chief of Review "as

[12] Delegation Order No. 12 (rev. 4), effective Jan. 13, 1972, provides as follows:

1. All Internal Revenue Service employees in supervisory positions other than positions specifically provided for in Sections 2 through 9 of this Order [supervisors of audit groups are not specifically provided for in these sections] are authorized to designate an employee to serve as Acting during their absence and, in case a supervisory position under their supervision and control becomes vacant, to designate an employee to serve as Acting.

Delegation Order No. 12 (rev. 5), effective May 10, 1972 (thus covering the date Roum signed the second Form 872), contains substantially identical language.

[13] Delegation Order No. 12 (rev. 4) and (rev. 5) both provided as follows:

9. The following designations as Acting shall be made a matter of record: Regional Commissioner; Assistant Regional Commissioner; District Director of Internal Revenue; Director, Internal Revenue Service Center; Director, Internal Revenue Service Data Center; and Director, National Computer Center.

designated," while no such factor is present in the instant case. We are unable to accept this assumption on petitioner's part since no evidence whatsoever was presented as to either Shore's or Roum's job description as internal revenue agents. Their job descriptions may very well have contained language similar to that of the senior reviewer's in *Wessel*. Even in the absence of such language, however, we think that both Shore and Roum, as experienced members of the audit group,[14] were fully authorized to act as "designates" in the group supervisor's absence regardless of whether their job descriptions so stated.

Petitioner also attempts to distinguish *Wessel* by arguing that statutory notices need not be signed by respondent to be valid, while respondent (or his delegate) must actually sign a consent in order to extend the statute of limitations. Thus, petitioner argues that, unlike the consents in the instant case, the statutory notices in *Wessel* were valid regardless of the authority of the individual who signed them. We think such a reading of *Wessel* is to transform our holding therein into mere dictum, and we refuse to so interpret that case. Moreover, the state of the law is, at best, unclear as to the necessity of respondent's signature in order to validate a consent to extend the statute of limitations. See 10 Mertens, Law of Federal Income Taxation, sec. 57.69 (1970).

Finally, petitioner argues that both Forms 872 are invalid because both such forms referred to a taxable year (March 1, 1968—January 22, 1969) other than the taxable year covered by the deficiency notice (March 1, 1968—February 28, 1969). Again, we are unable to sustain petitioner's position.

Both Forms 872 expressly stated that the taxable year to be extended was the taxable year ended January 22, 1969. Throughout the audit stage of this case, petitioner and respondent disagreed as to whether petitioner's taxable year ended on January 22, 1969 (as contended by petitioner), or February 28, 1969 (as contended by respondent). Thus, it is somewhat surprising that both forms, the typed portions of which were filled in by respondent's agent, make reference to the tax year ended January 22, 1969. Nevertheless, because respondent conceded that petitioner was in fact liquidated on January 22, 1969, both Forms 872 recited what the parties ultimately agreed to be petitioner's correct taxable year. We concur with re-

---

[14] At the time they served as acting group supervisors, both had attained a civil service rating of grade 13.

spondent who argues on brief that an error contained in a subsequent document (the statutory notice) should not render the correctly completed consents invalid.

In addition, we note that, generally, consents to extend the statute are agreed to and signed by the parties prior to respondent's completion of his audit. It is not unusual for one of the issues on audit to involve a determination as to the exact dates of a taxpayer's taxable year. This issue may not even arise until after one or more consents have been executed. To accept petitioner's argument would, in effect, force respondent to accept the taxable year recited on the Form 872 for purposes of the subsequently issued notice of deficiency because, otherwise, the consent would be invalid and the years would be barred. We do not think that the execution of consents was designed to have such a restrictive effect upon the conduct of respondent's audit functions.

Respondent has also determined an addition to tax under section 6651(a)(1)[15] of $2,128.75 for petitioner's alleged delinquency to timely file its final return. In general, this section imposes an addition to tax equal to 5 percent of the tax due for each month the return is delinquent (but not to exceed 25 percent) unless it is shown that the failure to timely file was due to reasonable cause.

Before proceeding to a disposition of this issue, we find it necessary to consider a question raised by petitioner as to which party bears the burden of proof on this issue.

In the statutory notice of deficiency sent to petitioner, a 5-percent penalty under section 6651(a) of $361.59 was imposed because respondent determined that petitioner's taxable year ended on February 28, 1968, and that its return for that year was not filed until May 19, 1969—4 days late.[16] Petitioner was sub-

---

[15] SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a) ADDITION TO THE TAX.—In the case of failure—

(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

[16] Sec. 1.6072-2(a), Income Tax Regs., provides that a domestic corporation shall file its

sequently able to prove to respondent's satisfaction that the return was in fact mailed on May 14, 1969, and was therefore timely filed if its taxable year ended on February 28, 1969.[17] In his amended answer, however, respondent (who had conceded that petitioner's taxable year ended on January 22, 1969) claimed a 10-percent section 6651(a)(1) penalty because of petitioner's failure to file within the period prescribed for a taxable year ending January 22, 1969.

Petitioner asserts that, under these facts, the burden to prove lack of reasonable cause to timely file shifts to respondent. Respondent, on the other hand, maintains that a section 6651(a)(1) penalty was asserted in the deficiency notice and that he has not raised a new issue in his amended answer which he must prove.

Where the addition to tax under section 6651(a)(1) has been determined in the deficiency notice, the burden of proving "reasonable cause" for late filing falls on the taxpayer. *Lee v. Commissioner,* 227 F.2d 181, 184 (5th Cir. 1955); *Eleanor C. Shomaker,* 38 T.C. 192, 202 (1962). However, if the additional tax is for the first time asserted in respondent's amended answer, it is considered a "new matter" and the burden of showing an absence of reasonable cause falls upon respondent. Rule 142(a), Tax Court Rules of Practice and Procedure; *American Ideal Cleaning Co.,* 30 B.T.A. 529 (1934); *James Nicholson,* 32 B.T.A. 977 (1935).

As the above facts indicate, the instant case falls somewhere between these two well-established legal principles. Respondent quite clearly determined a penalty under section 6651(a)(1) in his notice of deficiency; however, the penalty in his amended answer was asserted for an entirely different reason and for an increased amount.

In similar situations, those cases which hold respondent's new position not to be "new matter" which he must prove generally involve the assertion of a new "theory" which merely clarifies or develops the original determination without being inconsistent or increasing the amount of the deficiency. *Estate of George W. Jayne,* 61 T.C. 744, 748-749 (1974); *Rozelle McSpadden,* 50

return on or before the 15th day of the 3d month following the close of its taxable year. Therefore, respondent initially determined that petitioner's return was due May 15, 1969.

[17] Sec. 7502 provides, in general, that timely mailing will be treated as timely filing.

T.C. 478, 492-493 (1968); *Estate of Grace M. Sharf,* 38 T.C. 15 (1962); *Standard Oil Co.,* 43 B.T.A. 973 (1941).

However, where the new assertion in the amended answer does not simply narrow the issue raised in the deficiency notice and either alters the amount of the original deficiency or requires the presentation of different evidence, then it has been held that respondent has introduced a "new matter" on which he bears the burden of proof. *Rozelle McSpadden, supra; Leon Papineau,* 28 T.C. 54 (1957); *Sheldon Tauber,* 24 T.C. 179 (1955); *Estate of Floyd Falese,* 58 T.C. 895 (1972).

We think the instant case falls into the latter category. Both the set of facts and the rationale upon which respondent relied in the notice of deficiency are entirely different from the factual and legal bases necessary to support his position in the amended answer. We think respondent's new position requires the presentation of different evidence and cannot be said to simply clarify or develop his original determination.

Further, we are strongly influenced by the fact that respondent seeks an increased deficiency by way of his amended answer. In *Leon Papineau, supra,* respondent determined a deficiency based upon the cash receipts and disbursements method of reconstructing income. In an amended answer, however, respondent relied upon the net worth method and claimed a lesser deficiency. In that case, we said (28 T.C. at 57):

The statutory notice of deficiency is presumed to be correct, and the petitioner must bear the burden of overcoming this presumption. But where, as here, the respondent departs from the grounds upon which he based his original determination of deficiency, and in an amended answer relies, by way of an affirmative plea, upon other grounds resulting in decreased deficiencies by which he agrees to be bound, we deem him to have abandoned his original determination. Consequently, he must assume the burden of proof with respect to the new grounds for his claim. * * *

Although the instant case involves an increased rather than decreased deficiency, we think the same reasoning applies, and we hold that respondent bears the burden of proof.

Nevertheless, we think respondent has carried his burden in the instant case. The facts before us clearly show that petitioner (in the person of Pillsbury) provided Morro with all the necessary financial information and relied upon Morro to correctly prepare and timely file its final return; however, Morro apparently forgot that petitioner had dissolved prior to the end of its normal

taxable year and filed the return as if dissolution had not occurred.

We realize that there are cases where the taxpayer has shown reasonable cause where he selects a competent tax expert, supplies him with all the necessary information, and requests him to file proper returns. See *Haywood Lumber & Min. Co. v. Commissioner,* 178 F.2d 769 (2d Cir. 1950); *Burton Swartz Land Corp. v. Commissioner,* 198 F.2d 558 (5th Cir. 1952). However, such a rule has not been extended to encompass mere reliance on the expert to perform the ministerial function of filing the return. *Logan Lumber Co. v. Commissioner,* 365 F.2d 846, 853-854 (5th Cir. 1966); *Inter-American Life Insurance Co.,* 56 T.C. 497, 511 (1971); *Estate of William T. Mayer,* 43 T.C. 403 (1964). Moreover, even the fact that the expert was unaware of a statutory limit in which filing was required has been held insufficient to show reasonable cause. *Cronin's Estate v. Commissioner,* 164 F.2d 561 (6th Cir. 1947).

Accordingly, respondent has shown that there was no reasonable cause for petitioner's failure to timely file, and his claim for the 10-percent penalty of $2,128.75 is sustained.

We think one final question regarding the applicability of section 6651(a)(1) in the instant case, although not raised by either party, merits discussion.

As previously stated, under section 6651(a)(1) a 5-percent penalty is imposed if failure to timely file is for not more than 1 month, with an additional 5-percent penalty imposed for each additional month, or fraction thereof, that such failure continues. Thus, before the exact amount of the penalty can be determined, it is necessary to determine both the date the return is required to be filed as well as the date of actual filing.

Neither in his amended answer, nor at trial, nor on brief has respondent ever articulated his rationale for claiming a 10-percent as opposed to a 5-percent penalty under section 6651(a)(1). Respondent's counsel made certain statements at trial which leave us with the distinct impression that the 10-percent penalty was claimed for the wrong reasons.[18] We think

---

[18] On cross-examination, respondent's counsel asked Morro whether he (Morro) knew that the regulations require the filing of a return within 75 days after the end of the corporation's taxable year. The regulations do not so require. See Rev. Rul. 71-129, 1971-1 C.B. 397, discussed *infra.*

the 10-percent penalty is applicable in the instant case, but we also think petitioner is entitled to know why.

Petitioner was not dissolved until October 1, 1969. However, Rev. Rul. 71-129, 1971-1 C.B. 397,[19] holds that a corporation which has completely liquidated prior to actual dissolution has effected a de facto dissolution and must file a return for the short period ending on the date of liquidation. This ruling further prescribes that such return must be filed "on or before the fifteenth day of the third *full* month following the close of the short period." (Emphasis supplied.) Since petitioner was liquidated on January 22, 1969, under respondent's ruling, its return was required to be filed on April 15, 1969—the month of April being the third *full* month following January 22, 1969. Petitioner mailed its return on May 14, 1969, and such return was received by respondent on May 19, 1969.

If the "timely mailing—timely filing" rule of section 7502 were to apply in the instant case, only a 5-percent penalty would be due because the return was mailed (May 14, 1969) less than 1 month after it was due (April 15, 1969). However, in Rev. Rul. 73-133, 1973-1 C.B. 605, respondent has ruled that he will not apply the "timely mailing—timely filing" rule of section 7502 in computing the delinquency penalty under section 6651(a)(1) and that the return will be treated as filed on the date it is received. In the instant case, this means that respondent did not treat petitioner's return as "filed" until May 19, 1969, and, thus, such return was filed more than 1 month late. Hence, the 10-percent penalty would apply.

In sustaining respondent's claim to the 10-percent penalty in the instant case, we will follow Rev. Rul. 73-133, *supra.* However, our holding herein should not be construed as a final expression of approval as to that ruling. Cf. *Label-Matic, Inc. v. United States,* an unreported case (N.D. Cal. 1974, 33 AFTR 2d 74-1181, 74-1 USTC par. 9380). Petitioner has not sought to litigate the correctness of Rev. Rul. 73-133, *supra,* and we would prefer to postpone any consideration of the ruling's validity until we are faced with a case in which the issue has been appropriately raised

---

[19] This revenue ruling merely updated and restated Rev. Rul. 215, 1953-2 C.B. 149, which was applicable to the year at issue.

and argued by the parties. Cf. *Industrial Valley Bank & Trust Co.,* 66 T.C. 272 (1976).

*Decision will be entered under Rule 155.*