DOUGLAS H. and TEDDI DAMM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Damm v. Commissioner
Docket No. 6412-74.
United States Tax Court
T.C. Memo 1977-194; 1977 Tax Ct. Memo LEXIS 248; 36 T.C.M. (CCH) 793; T.C.M. (RIA) 770194; June 22, 1977, Filed Joseph W. Weigel, for the petitioners. Rodney J. Bartlett, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: * Respondent has determined a deficiency in petitioners' Federal income tax for the taxable year 1972 in the amount of $286.84. There are two issues for our decision: (1) Whether income paid to petitioner Douglas H. Damm (Douglas) for his personal efforts and net profit *251 derived from petitioners' cosmetics distributorship, all of which income and net profit was paid or derived after Douglas had purportedly conveyed his lifetime services to a family trust, should be included in petitioners' gross income under section 61 [1] or, alternatively, under sections 671 through 677, inclusive; and (2) If any of such income is included in petitioners' gross income, whether they should be allowed certain deductions related to such income which were originally claimed on the family trust's Federal fiduciary income tax return (Form 1041). FINDINGS OF FACT All of the facts have been stipulated and are so found. Those necessary to an understanding of the case are as follows. Petitioners Douglas H. Damm and Teddi Damm, husband and wife, resided in Medford, Wisconsin, at the time they filed the petition herein. Petitioners filed a *252 joint Federal income tax return for 1972 with the Internal Revenue Service Center, Kansas City, Missouri. On May 18, 1972, petitioners created The Douglas H. Damm Family Estate (A Trust) (hereinafter referred to as the Trust). For the taxable year 1972, petitioners and Thomas Lynn were the trustees of the Trust (Trustees). On May 20, 1972, petitioner Douglas H. Damm (hereinafter Douglas) executed a document purporting to convey to the Trust "ALL [his] EARNED AND TO BE EARNED remuneration and all [his] right, title and interest in such earnings from any services rendered or to be rendered" to Montgomery Ward & Co., Inc. (Montgomery Ward), and to his Koscot cosmetics distributorship, as well as documents purporting to convey to the trust certain real and personal property and the rights thereto, in exchange for all 100 units of beneficial interest in the Trust. Such units of beneficial interest convey only a right to receive a pro-rata share of any distributions which may be made at the discretion of a majority of the Trustees. At the third Trustee's meeting, Douglas returned his certificate of ownership of all 100 units of beneficial interest for cancellation and reissuance *253 to The Douglas H. Damm Educational Trust (hereinafter Educational Trust). Petitioners were neither beneficiaries nor trustees of the Educational Trust. Douglas notified Montgomery Ward of his purported conveyance of his personal services to the Trust and he provided it with the Internal Revenue Service Employer Identification Number which had been assigned to the Trust. Douglas requested that future payroll checks be made payable to the Trust but Montgomery Ward refused to comply with this request. During the taxable year 1972, Montgomery Ward issued payroll checks to Douglas in amounts totaling $3,888.17. Upon receipt of each of these payroll checks, Douglas would endorse them with his personal signature and place an imprint on the back of the check reading "Pay to the Order of Farmers State Bank FOR DEPOSIT ONLY in the Account of the Douglas H. Damm Family Estate (a Trust)." The operation of the Koscot distributorship did not undergo any substantial change as a result of the purported transfer of Douglas' personal services to the Trust. The Trust paid no salary or wages to any person for services performed with respect to the distributorship. Fees in the sum of $980.24 *254 [2] were paid to Douglas by the Trust subsequent to May 18, 1972, but such fees were paid only for services that Douglas rendered in his capacity of trust consultant. Petitioner Teddi Damm (Teddi), as Trustee, filed the Trust's Federal fiduciary income tax return for the taxable year 1972. The Trust reported as income on its Federal fiduciary income tax return the amount of $3,888.17, which Montgomery Ward had paid to Douglas. Subsequent to May 18, 1972, the Trust operated the Koscot distributorship through the efforts of petitioners and derived a net profit for tax purposes of $367.77, which was included in the Trust's gross income on its Federal fiduciary income tax return. The administrative expenses claimed by the Trust on its return totaled $6,016.89 and consisted of expenses for (1) rent on a house occupied by the petitioners, (2) postage for the Trust, the Koscot distributorship, and petitioners, (3) entertainment with respect to Trust matters, (4) contributions paid in the name *255 of the Trust, (5) use of a telephone by the Trust, the Koscot distributorship and petitioners, (6) payment of an automobile loan which the Trust assumed at the time the automobile was transferred to it, (7) transportation for the Trust, the Koscot distributorship and petitioners, (8) medical care for the petitioners, (9) insurance on the life and health of the petitioners, (10) electricity used in the house occupied by the petitioners, (11) miscellaneous expenses (photographs, laundry, household items, cosmetics) of the petitioners, and (12) consultant fees in the amount of $980.24 paid to Douglas. On their joint Federal income tax return for the taxable year 1972, petitioners reported the $3,888.17 received as wages from Montgomery Ward with an offsetting "adjustment to income" of a similar amount. Petitioners also included in their gross income the net profit, totaling $1,104.59, derived from the Koscot distributorship prior to May 18, 1972, as well as the amount of consultant fees paid to Douglas by the Trust.
In his statutory notice of deficiency, respondent determined a deficiency for the taxable year 1972 in the amount of $286.84. Respondent increased petitioners' gross *256 income by excluding the consultant fees paid to Douglas by the Trust while including the amounts paid to Douglas by Montgomery Ward without the offsetting "adjustment to income" which petitioners had taken. Respondent did not allow petitioners any of the deductions which were related to such income and which had been originally claimed by the Trust on its return. In his amended answer, respondent further increased petitioners' gross income by including the profit derived from the Koscot distributorship subsequent to May 18, 1972, and thereby increasing the asserted deficiency to a total of $374.43.
OPINION Petitioners argue that the income paid to Douglas by Montgomery Ward and the net profit derived from the Koscot distributorship subsequent to May 18, 1972, are not properly includable in their gross income because Douglas had conveyed his lifetime services to the Trust so that any income resulting from Douglas' lifetime services after such conveyance [3] is includable in the Trust's gross income rather than petitioners. Respondent argues, on the other hand, that both the income received from Montgomery Ward and the net profit derived from the Koscot distributorship are properly *257 includable in petitioner's gross income under section 61 as amplified by the assignment of income doctrine or, alternatively, under sections 671 through 677, inclusive. Under the assignment of income doctrine, income is taxed to the one who actually earns it and the tax may not be avoided by "anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it." Lucas v. Earl,281 U.S. 111 (1930). Moreover, the entity which controls the earning of the income, rather than the income itself, is the actual, or "true" earner, of such income. American Savings Bank v. Commissioner,56 T.C. 828 (1971). After examining all of the surrounding facts and circumstances, we are persuaded that Douglas, not the Trust, controlled the earning of both the income paid to him by Montgomery Ward and the net *258 profit derived from the Koscot distributorship. The document by which Douglas purported to convey his lifetime services to the Trust stated: I, Douglas H. Damm hereby convey to THE DOUGLAS H. DAMM FAMILY ESTATE (A TRUST) ALL MY EARNED AND TO BE EARNED remuneration and all my right, title and interest in such earnings from my services rendered or to be rendered to * * * [Montgomery Ward and the Koscot distributorship.] Assuming arguendo that this document constituted a valid contract, it is clear that Douglas had complete control over the amount of income that the Trust received. Douglas had no legal duty to earn income for the benefit of the Trust but only a duty to turn over to the Trust whatever he earned. Jones v. Commissioner,64 T.C. 1066 (1975); American Savings Bank,supra.Nor does this document of conveyance give the Trust any right to direct the activities of Douglas. Morrison v. Commissioner,54 T.C. 758 (1970). Petitioners rely upon Rubin v. Commissioner,429 F. 2d 650 (2d Cir. 1970). In Rubin, the form of the transaction was such that the taxpayer was the employee of the corporation *259 which had purportedly earned the income and the purported earner was an original party to the contract from which the income in dispute had arisen. In this context, the Court of Appeals for the Second Circuit held that section 482, rather than the assignment of income doctrine, should be utilized since it was not only an adequate, but also a clearly superior means, for dealing with the problem presented. In the instant case, however, the form of the transaction is different. Montgomery Ward refused to enter into a contract with the purported earner (the Trust). Douglas did not originally enter the Koscot distributorship agreement in his capacity as Trustee and he did not assign the distributorship agreement to the Trust, but merely assigned all his earned and to be earned remuneration from such distributorship. Therefore, the Trust was not a party to either the distributorship agreement or the Montgomery Ward employment contract. Furthermore, as discussed above, the Trust had no legal right to control the amount of income earned or the manner in which it was earned whereas, in Rubin, the purported earner, as the taxpayer's employer, had the legal right to control *260 the earning of the income although the taxpayer in substance had control over the earning of the income because he was the controlling shareholder of the purported earner. Such facts make the instant case clearly distinguishable from Rubin, as well as Laughton v. Commissioner,40 B.T.A. 101 (1939), remanded 113 F. 2d 103 (9th Cir. 1940), and Fox v. Commissioner,37 B.T.A. 271 (1938), upon which petitioners also rely. American Savings Bank,supra.
The burden of proof has shifted to respondent on the issue of including in petitioners' gross income the net profit derived from the Koscot distributorship after Douglas' purported conveyance of his life services. Such issue was raised by the respondent for the first time in his amended answer and it increased the amount of the deficiency. Therefore, it is new matter, within the meaning of Rule 142(a), Tax Court Rules of Practice and Procedure, on which the respondent bears the burden of proof because it is a "new assertion in the amended answer [which] does not simply narrow the issue raised in the deficiency notice and either alters the amount of the original *261 deficiency or requires the presentation of different evidence." Sanderling,Inc. v. Commissioner,66 T.C. 743, 758 (1976). (Emphasis supplied.) As has already been pointed out, (1) it is clear from reading the document purporting to convey Douglas' life services, that Douglas had control over both the amount of income that he earned and the manner in which he earned such income, and (2) the Trust was not a party to the Koscot distributorship agreement since the purported conveyance of Douglas' lifetime services did not assign Douglas' rights in the distributorship agreement to the Trust, but merely conveyed to the Trust all of Douglas' earned or to be earned remuneration from the distributorship. Additionally, the parties have agreed and stipulated that "[the] operation of the Koscot Cosmetics distributorship did not undergo any substantive change as a result of the purported transfer of petitioner Douglas H. Damm's lifetime services to The Douglas H. Damm Family Estate (A Trust)." Such fact indicates that the control of the earning of the distributorship income remained with Douglas after the conveyance instead of shifting to the Trust. [4] Accordingly, we *262 hold that respondent has met his burden of proving that the net income derived from the Koscot distributorship should be included in petitioners' gross income for the year 1972. Likewise, since petitioners have not met their burden of proving otherwise, we hold that the income paid to Douglas by Montgomery Ward should be included in petitioners' gross income for 1972. Therefore, it is unnecessary to consider respondent's alternative argument that such income is includable under sections 671 through 677, inclusive. Petitioners argue that if we include the income paid to Douglas by Montgomery Ward and the net profit derived from the Koscot distributorship subsequent to May 18, 1972, in their gross income, then we should also allow them to take as deductions from their gross income those deductions, totaling $6,016.89, which are related to such income and which the Trust originally claimed on its Federal fiduciary income tax return. Respondent did not allow any of these deductions in his statutory notice so that petitioners have the burden of proving their entitlement to such deductions. Rule 142(a), Tax *263 Court Rules of Practice and Procedure. The parties have stipulated and agreed as to the nature of these expenses and some, such as consultant fees [5] paid to Douglas by the Trust, are clearly nondeductible while others (rent, postage, entertainment, telephone, car payments, electricity, and miscellaneous expenses) will be deductible only if they qualify under section 162 or section 212. We must presume that the business expenses of the Koscot distributorship have already been deducted from gross profits in arriving at the net profit figure which respondent included in petitioners' gross income. Petitioners have introduced no evidence contrary to such presumption nor have they introduced any evidence to sustain their burden of proving that such expenses were ordinary and necessary expenses incurred in carrying on a trade or business (section 162), in the production of income (section 212(1), or for the management, conservation, or maintenance of income-producing property (section 212(2)). Accordingly, we hold that petitioners are not entitled to deductions for such expenses. *264 The parties have agreed and stipulated that some expenses were for "[medical] expenses of the petitioners" and, for "[insurance] on the life and health of petitioners." Of course, medical expenses and health insurance expenses are deductible in part under section 213. [6] The parties have not stipulated the amount of such medical expenses; however, they have jointly introduced a list of checks written by the Trust during 1972 which provides the date, check number, check amount, and name of the payee in addition to four columns, one of which contains the amounts of those checks written to cover travel and health expenses. Such column totals $2,260.63, and, using our best judgment, we hold that $250 of such amount represents medical expenses of the petitioner and that $50 of such amount was paid for medicine and drugs. Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930). Applying Cohan, we also hold that petitioners expended $100 for health insurance during 1972. *265 These medical and insurance expenses were purportedly paid by Teddi Damm, in her capacity as a Trustee. However, the Trust's only income during 1972 was income which we have held was actually earned by Douglas and properly includable in petitioners' gross income. Furthermore, we find it inconceivable that Douglas would have conveyed his personal and real property to the Trust as well as assigned all of his earnings to the Trust without the understanding that the Trust would pay his wife's and his own medical and health insurance expenses. Therefore, we find Douglas, in his personal capacity, paid or incurred medical expenses totaling $250 (including $50 for medicine and drugs) and health insurance expenses totaling $100 during 1972, and, accordingly, we hold that petitioners should be allowed such a deduction computed in accordance with the provisions of section 213. While the parties stipulated and agreed that some of the trust expenses represented "contributions," they did not stipulate that such contributions were charitable contributions as required under section 170, and petitioners have not met their burden of proving their entitlement to a deduction under section 170. *266 Accordingly, we hold that petitioners are entitled to no deduction on account of the contributions paid in the name of the Trust. Decision will be entered under Rule 155. Footnotes
1. a1 This case was submitted for adjudication under Rule 122, Tax Court Rules of Practice and Procedure. By order of the Chief Judge, dated November 3, 1976, this case was assigned to Judge Bruce M. Forrester for disposition. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
2. Although Douglas reported consultant's fees in the amount of $980.54 on his 1972 Federal income tax return, the parties have stipulated the correct amount of such fees to be $980.24.↩
3. While the purported document of conveyance is dated May 20, 1972, both parties have argued the case as if the purported conveyance took place on May 18, 1972, which is the date on which the Trust was created, and, therefore, we will decide the case on that basis.↩
4. Foglesong v. Commissioner,T.C. Memo. 1976-294↩.
5. In his statutory notice respondent excluded the amount of these fees from petitioners' gross income.↩
6. SEC. 213. MEDICAL DENTAL, ETC., EXPENSES. (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and (2) an amount (not in excess of $150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents. (b) Limitation With Respect to Medicine and Drugs.-- Amounts paid during the taxable year for medicine and drugs which (but for this subsection) would be taken into account in computing the deduction under subsection (a) shall be taken into account only to the extent that the aggregate of such amounts exceeds 1 percent of the adjusted gross income.↩